WENDEL v. SWANBERG

1. APPEAL AND ERROR—DISCRETION—ABUSE OF DISCRETION—WORDS AND PHRASES.

> Appellate review of a trial court's valid exercise of discretion is sharply limited since the term "discretion" itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations and, in order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

2. JUDGMENT—DEFAULT JUDGMENT—SETTING ASIDE DEFAULT—TIME —FRAUD—COURT RULES.

> The setting aside of default judgments after four months has long been disfavored in Michigan where a default is

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 5 Am Jur 2d, Appeal and Error § 772.
[2] 47 Am Jur 2d, Judgments § 701.
[3] 4 Am Jur 2d, Appeal and Error §§ 115, 127.
  Appealability of order setting aside, or refusing to set aside, default judgment. 8 ALR3d 1272.
[4] 47 Am Jur 2d, Judgments § 682.
[6] 44 Am Jur 2d, Insurance §§ 1461, 1464.
[6–8, 10] Liability insurance: clause with respect to notice of accident or claim, etc., or with respect to forwarding suit papers. 18 ALR2d 443.
[7, 8, 10] 44 Am Jur 2d, Insurance § 1479.
[9] 43 Am Jur 2d, Insurance §§ 270, 276.
[11] 53 Am Jur, Trial §§ 340, 394.
[12] 5 Am Jur 2d, Appeal and Error § 849.
  Appealability of order overruling motion for directed verdict, or for judgment, or the like, where the jury has disagreed. 40 ALR2d 1284.
[13] 44 Am Jur 2d, Insurance § 2059.

regularly taken following personal service and this has been subject to few exceptions, the most notable being that of fraud (GCR 1963, 520, 528).

3. APPEAL AND ERROR—MOTIONS—SETTING ASIDE DEFAULT JUDGMENT—FRAUD—DISCRETION.

The Michigan Court of Appeals had no cause or authority, in reviewing a trial court's denial of a motion to set aside a default judgment, to speculate as to fraud between the parties since none was alleged; nor, did it have the right to substitute its discretion for that of the trial judge.

4. JUDGMENT — SETTING ASIDE DEFAULT JUDGMENT — DISCRETION — ABUSE OF DISCRETION.

The trial court did not abuse its discretion in denying a motion to set aside a default judgment where the defendant was personally served, she knew of the default judgment, at the latest, six months later but did not file the motion to set aside the default judgment until more than nine months after it was regularly entered.

5. APPEAL AND ERROR—MOTIONS—DISCRETION.

Appellate courts may reverse only when they find the trial judge abused his discretion, where a motion is addressed to the trial court's discretion.

6. INSURANCE—LIABILITY INSURANCE—NOTICE TO INSURER—PURPOSE OF NOTICE.

Provisions in liability insurance contracts requiring the insured to give the insurer immediate or prompt notice of accident or suit are common, if not universal, and the purpose of such provisions is to allow the insurer to make a timely investigation of the accident in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims.

7. INSURANCE—NOTICE—KNOWLEDGE—PRINCIPAL AND AGENT—SCOPE OF AUTHORITY.

The general rule of insurance law is that the knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority, and which is acquired while the agent is acting within the scope of his authority, is chargeable to an insurer.

8. INSURANCE—STATUTES—NOTICE—PRINCIPAL AND AGENT.

By statute liability insurance policies must contain "a provision that notice given by or on behalf of the insured to any

authorized agent of the insurer within this state, with particulars sufficient to identify the insured shall be deemed to be notice to the insurer" (MCLA § 500.3008).

9. INSURANCE—STATUTES—MANDATORY STATUTORY PROVISIONS—CONTRACTS—CONSTRUCTION.

Mandatory statutory provisions are read into insurance contracts though they be omitted by the parties.

10. INSURANCE — NOTICE OF ACCIDENT — NOTICE OF SUIT — DELAY — PREJUDICE — PRINCIPAL AND AGENT — FORFEITURE — BURDEN OF PROOF.

The principles, that notice to an authorized agent is notice to the insurer, that mere delay in giving the required notice does not work a forfeiture because such provisions are construed to require notice with a reasonable time, and that prejudice to the insurer is a material element in determining whether notice is reasonably given and the burden is on the insurer to demonstrate such prejudice, apply equally to notice of accident and notice of suit although their application will differ in varying factual contexts.

11. TRIAL—DIRECTED VERDICT—EVIDENCE.

The standard governing a motion for a directed verdict is whether, viewing the competent evidence and all legitimate inferences flowing therefrom in the light most favorable to the opposing party, the trier of fact could reasonably return a verdict against the movant which would accord with the law of the case; if so, the motion should be denied.

12. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE—JURY QUESTION—NEGLIGENCE—GARNISHMENT.

A defendant's right to a directed verdict in a negligence action is applicable to a motion for a directed verdict in a garnishment action and an appellate court must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered by the defendant as, however improbable some portions of the plaintiff's testimony may appear to the appellate court, that court cannot say that the jury might not have given it full credence as it is for the jury and not for the court to compare and weigh the evidence and the moving party must concede all that his opponent may claim from the testimony.

13. TRIAL—DIRECTED VERDICT—INSURANCE—NOTICE OF SUIT—DELAY
    —PREJUDICE—GARNISHMENT.

> Insurer was not entitled to a directed verdict of non-liability
> in a garnishment action where the jury, if it believed the
> insured, as it was entitled to, could reasonably have con-
> cluded, that the insurer was not prejudiced by the insured's
> delay in forwarding the suit papers, indeed that the only
> prejudice, if any, resulted from the insurer's own inaction,
> and the jury was extensively and accurately instructed as
> to the contractual duties of the insured and the insurer, and
> as to prejudice to the insurer from delay in forwarding suit
> papers.

Appeal from Court of Appeals, Division 3, Quinn, P. J., and Holbrook and T. M. Burns, JJ., reversing and remanding Manistee, Charles A. Wickens, J. Submitted November 10, 1970. (No. 20 October Term 1970, Docket No. 52,480-1.) Decided April 5, 1971.

17 Mich App 235 reversed.

Complaint by Richard O. Wendel and Elizabeth M. Wendel against Helen Swanberg for damages resulting from a fall by Elizabeth M. Wendel on defendant's premises. Default judgment entered for plaintiffs. Writ of garnishment issued against Travelers Indemnity Co., defendant's insurer. Verdict for plaintiffs against garnishee defendant. Plaintiffs' motion for summary judgment against garnishee defendant granted. Principal defendant's motion to vacate default judgment denied. Garnishee defendant's motion to vacate garnishment judgment and for new trial denied. Principal defendant and garnishee defendant appealed to the Court of Appeals. The appeals were consolidated. Reversed and remanded. Plaintiffs appeal. Reversed and remanded.

*Donald G. Jennings,* for plaintiffs.

*John E. Hart,* for defendant Helen Swanberg.

*Korn & Burns,* for garnishee defendant Travelers Indemnity Co.

T. M. KAVANAGH, C. J.   On February 15, 1966, Elizabeth Wendel, plaintiff-appellant, visited Helen Swanberg, defendant-appellee, at Mrs. Swanberg's home in Onekama, Manistee County, Michigan.   As she was departing, Mrs. Wendel slipped and fell on the defendant's premises before reaching her automobile.   She sustained a fracture of her left hip.

At the time of the accident Mrs. Swanberg was insured by Travelers Indemnity Company, garnishee defendant-appellee, under a homeowner's policy issued through the Boyer Agency of Manistee.   The policy had a personal liability limit of $25,000 and contained the standard defense clause as to personal injury lawsuits.[1]   Under the heading "GENERAL CONDITIONS" the policy contained a provision reading as follows:

"Section II—*Insured's Duties in the Event of Loss, Accident or Occurrence:*

"(a) *Coverage E* [Personal Liability] *and F* [Personal Medical Payments] : When an occurrence takes place, written notice shall be given by or on

---

[1] "The Travelers agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and The Travelers shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this Section, even if any of the allegations of the suit are groundless, false or fraudulent; but The Travelers may make such investigation and settlement of any claim or suit as it deems expedient."

behalf of the Insured to The Travelers or any of its authorized agents as soon as practicable.   *   *   *

"(b) *Coverage E:* If claim is made or suit is brought against the Insured, the Insured shall immediately forward to The Travelers every demand, notice, summons or other process received by him or his representative."

By mid-June, 1966, Travelers had been informed of the accident by Mrs. Swanberg, had made an investigation, and had offered Richard and Elizabeth Wendel a "voluntary payment" of $500, which was rejected.

On February 3, 1967, in Manistee County Circuit Court, the Wendels commenced a personal injury lawsuit against Helen Swanberg based on the above described accident. They demanded $25,000 in damages. Complaint and summons were personally served on Mrs. Swanberg on February 7, 1967. Upon her failure to appear and answer, an affidavit of default was filed and default was entered on April 20, 1967. On May 8, 1967, after hearing testimony on behalf of the plaintiffs, the Honorable Charles A. Wickens entered a default judgment awarding Elizabeth Wendel $15,000 damages and Richard Wendel $10,000.[2]

On December 1, 1967, a writ of garnishment was issued directed to Travelers Indemnity Company,

---

[2] It appears that counsel for the Wendels, Donald G. Jennings, had on one occasion met socially with the defendant, Helen Swanberg, after suit was commenced but nothing was said with regard to the progress of the litigation. Defendants' briefs and arguments in favor of setting aside the default judgment allude to improper motivation for Mr. Jennings' silence in this regard, particularly in his failure to inform Mrs. Swanberg of the entry of default and of the default judgment. We think the Canons of Professional Ethics (No. 9) and common sense precluded informal discussion of the lawsuit with Mrs. Swanberg, the opposing party. This Court is not unaware that small town attorneys are continually called upon to exercise discretion in this regard. The safest and most proper course is usually silence or tactful change of subject.

garnishee defendant-appellee. Travelers' disclosure stated the company had no liability or indebtedness to defendant Swanberg; but in answer to interrogatories, Travelers admitted the existence of the above-discussed policy, attached a copy, and stated that it was in effect at the time of the accident. Subsequently, in its answer to plaintiffs' motion for summary judgment, Travelers set up policy defenses, viz., the alleged failure of Mrs. Swanberg to give prompt notice of the personal injury suit. Mrs. Swanberg testified she mailed the suit papers to the Boyer Agency in June, 1967, and received a return receipt. No one denied they were received by the agency. An employee of the Boyer Agency testified that she found the papers among its files near the end of November, 1967, and promptly presented them to a Travelers' representative. Judge Wickens denied both parties' motions for directed verdicts. On March 19, 1968, the jury found Travelers liable to plaintiffs. Thereafter, the trial court granted plaintiffs' previous motion for a summary judgment on the grounds that the only issues of fact, those raised by Travelers' policy defenses, were raised too late, and that, therefore, Travelers' admission in its disclosure of the existence of the applicable policy rendered the insurer liable to plaintiffs as a matter of law. Following denial of its motion for vacation of the garnishment judgment and for a new trial, Travelers claimed an appeal to the Court of Appeals.

While the garnishment action was proceeding to trial, Mrs. Swanberg, defendant in the principal action, first appeared therein on February 16, 1968, by filing a motion to set aside the default judgment. After a hearing, on February 26, 1968, Judge Wickens denied the motion. An appeal was claimed to the Court of Appeals which was consolidated

with Travelers' later appeal from the garnishment judgment.

The Court of Appeals reversed the decision of the trial court on the motion to set aside the default judgment and remanded the case for trial. The garnishment judgment was accordingly vacated. 17 Mich App 235. Appellants are here on leave granted. 383 Mich 755.

Although the parties have raised several issues[3] two are controlling:

1) Assuming the trial court had discretion to set aside the default judgment in the principal action,[4] did it abuse its discretion by refusing to so act in this case?

2) Assuming the insurer's policy defenses were timely raised, was it entitled to a directed verdict of nonliability in the garnishment action?

We have concluded that both questions must be answered negatively and the trial court's judgments reinstated.

Our prior decisions sharply limit appellate review of a trial court's valid exercise of discretion:

"The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order

---

[3] While noting that the long-standing "within 4 months" language of former Court Rule No 28, § 4, (1945) remains in GCR 1963, 520, despite the reference therein to GCR 1963, 528, we will not consider appellants' contention that Judge Wickens was without discretion to set aside the default judgment because he exercised the claimed discretion in favor of appellants and we find no abuse. But see, *Walters* v. *Arenac Circuit Judge* (1966), 377 Mich 37. However, since the parallel Federal rules (Federal Rules of Civil Procedure, Rule 55[c] and Rule 60[b]) contain no such "within 4 months" language, we do not find persuasive the Federal cases cited by appellees in favor of liberal setting aside of default judgments.

Similarly, we need not reach the insurer's contention that appellants were not entitled to a summary judgment in the garnishment action because the case was submitted to the jury and its verdict paralleled the subsequent decision of Judge Wickens on appellants' motion for summary judgment.

[4] See, footnote 3, *supra.*

to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Spalding* v. *Spalding* (1959), 355 Mich 383, 384, 385.

Furthermore, although we have assumed for the purposes of this decision that Judge Wickens had discretion to set aside the default judgment,[5] we note that the setting aside of default judgments after 4 months has long been disfavored in Michigan:

"Our Court has traditionally been strict on setting aside defaults once regularly entered. Where a default following personal service is regularly taken, the court rule [former Court Rule No 28, § 4, (1945)] providing that it shall not be set aside after a certain time (presently 4 months) has generally been regarded as mandatory (*Hensey* v. *Hensey* [1951], 331 Mich 518; *Gombasy* v. *Gombasy* [1947], 318 Mich 139; *Watkins* v. *Wayne Circuit Judge* [1929], 247 Mich 237), and this rule, however harsh, has been subject to few exceptions, the most notable being that of fraud (*Hensey* v. *Hensey, supra*), which is not urged or suggested here."[6]   *White* v. *Sadler*

[5] But see, footnote 3, *supra*.

[6] The Court of Appeals apparently suspected collusion—bordering on fraud—between Mrs. Swanberg and the Wendels to deprive Travelers of its day in court: "The record before us is strongly suggestive of the fact that defendant was desirous of assisting her friend, the injured Elizabeth M. Wendel, and that this desire continued to the point at which defendant realized she might become financially involved in that assistance." 17 Mich App 235, 238. For the reasons set forth in the body of this opinion, we conclude Judge Wickens acted reasonably in denying the motion to set aside the default judgment. The Court of Appeals had no cause or authority to speculate as to fraud since none was alleged. Nor did it have the right to substitute its discretion for that of Judge Wickens. As for harm to the insurer: if Travelers had wanted its day in court on the question of Mrs. Swanberg's liability (principal action), it should not have declined to support her motion to set aside the default and the default judgment until the motion had been denied and the garnishment action appeared headed for a jury. See, our discussion of the second issue, *infra*.

(1957), 350 Mich 511, 521, 522; also quoted in
*Walters* v. *Arenac Circuit Judge, supra,* at 55 (dissenting opinion) and in *Haenlein* v. *Saginaw Building Trades Council, A.F.L.* (1960), 361 Mich 263, 266.

Applying these principles to the present facts we find no abuse of discretion. Mrs. Swanberg was personally served in February, 1967. She knew of the default judgment by November, 1967, at the latest when her bank account was garnisheed and a writ of execution levied on her home. Travelers informed her that it would not attempt to defend her early in December, 1967. Yet her motion to set aside the default judgment was not filed until February 16, 1968, more than nine months after the default judgment was regularly entered. When a motion is addressed to the trial court's discretion, appellate courts may reverse only when they find the trial judge abused his discretion. *Spalding* v. *Spalding, supra.* We hold that the trial court did not abuse its discretion in refusing to set aside the default judgment.

The second issue is whether Travelers was entitled to a directed verdict of nonliability in the garnishment action because its insured, Mrs. Swanberg, did not "immediately forward" the suit papers to Travelers upon receipt, as required by the insurance contract.

Provisions in liability insurance contracts requiring the insured to give the insurer immediate or prompt notice of accident or suit are common, if not universal. The purpose of such provisions is to allow the insurer to make a timely investigation of the accident in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims. *Wehner* v. *Foster* (1951), 331 Mich 113; *Exo* v. *Detroit Automobile Inter-Insurance Exchange* (1932), 259 Mich 578. See also, Anno., 18 ALR2d 443; Com-

ment, 51 Mich L Rev 275. The pertinent legal principles deducible from our cases and statutes regarding such notice provisions are as follows:

1) Notice to an authorized agent is notice to the insurer.[7] By statute liability insurance policies must contain "a provision that notice given by or on behalf of the insured to any authorized agent of the insurer within this state, with particulars sufficient to identify the insured shall be deemed to be notice to the insurer   *   *   *   ." MCLA § 500.3008 (Stat Ann 1957 Rev § 24.13008). Mandatory statutory provisions are read into insurance contracts though they be omitted by the parties. *Galkin* v. *Lincoln Mutual Casualty Co.* (1937), 279 Mich 327; *Chrysler Corporation* v. *Hardwick* (1941), 299 Mich 696.

2) Mere delay in giving the required notice does not work a forfeiture because such provisions are construed to require notice within a reasonable time. *Kennedy* v. *Dashner* (1947), 319 Mich 491; *Exo* v. *Detroit Automobile Inter-Insurance Exchange, supra.*

3) Prejudice to the insurer is a material element in determining whether notice is reasonably given (*Wehner* v. *Foster, supra; Weller* v. *Cummins* [1951], 330 Mich 286) and the burden is on the insurer to demonstrate such prejudice. *Kennedy* v. *Dashner, supra; Wehner* v. *Foster, supra.*[8]

The above principles apply equally to notice of accident and notice of suit although their application will

---

[7] The general rule of insurance law is that the knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority, and which is acquired while the agent is acting within the scope of his authority, is chargeable to an insurer. *Hawkeye Casualty Co.* v. *Holcomb* (1942), 302 Mich 591.

[8] The Federal case of *Kravat* v. *Indemnity Ins. Co. of North America* (CA 6, 1945), 152 F2d 336, based on Michigan law, contains numerous additional citations to Michigan cases wherein the listed principles were declared and applied. We agree with the *Kravat* court that the question of the reasonableness of the notice given is usually one for the trier of fact.

differ in varying factual contexts. *Weller* v. *Cummins, supra,* at 293.

In this case Travelers admittedly received adequate notice of the accident. A timely investigation was made by a Travelers' adjuster whose offer to the Wendels was rejected.[9]

Our question is thus limited to the area of notice of suit. In the light of the above stated purposes of notice provisions and the legal principles governing them, the issue can be more precisely stated as follows: Did Mrs. Swanberg's delay in forwarding the suit papers materially prejudice Travelers as a matter of law?

The standard governing a motion for a directed verdict is whether, viewing the competent evidence and all legitimate inferences flowing therefrom in the light most favorable to the opposing party, the trier of fact could reasonably return a verdict against the movant which would accord with the law of the case. If so, the motion should be denied. *Blazo* v. *Neveau* (1969), 382 Mich 415. The language of Justice COOLEY regarding a defendant's right to a directed verdict in a negligence action is applicable here:

"In determining this question, we must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him any thing which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some

---

[9] We do not consider whether the facts of notice of accident investigation, and rejection of settlement offer were sufficient to place Travelers "on guard" regarding a possible suit so as to require subsequent inquiry of Mrs. Swanberg as to whether suit had been brought. The question needn't be reached because we have concluded that a jury could reasonably conclude that Travelers was not prejudiced by Mrs. Swanberg's delay until June, 1967, in forwarding the suit papers to the Travelers.

portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence. For the purposes of any positive instructions which one party may demand upon the evidence, he must concede all that his opponent may claim from it." *Detroit & M. R. Co.* v. *Van Steinburg* (1868), 17 Mich 99, 117, 118.

In this case Mrs. Swanberg testified that she did not immediately forward the suit papers to Travelers upon receipt in February, 1967, because she was under the impression that the insurer would receive copies. She further testified that upon the advice of a friend, she sent the papers to the Boyer Agency (hence to Travelers)[10] in June, 1967, and received a return receipt—within two months of the entry of the default judgment[11] of which she was unaware. This testimony was not refuted although an employee of the Boyer Agency testified that the suit papers were not found among the papers to be presented to the Travelers' representative until November, 1967.

The jury was extensively and accurately instructed as to the contractual duties of Mrs. Swan-

---

[10] Travelers would have us distinguish the contract requirement of notice of accident (occurrence), which it admits may be given to its agent (Boyer Agency), from the contract requirement of forwarding suit papers, which it says cannot be fulfilled through the agent. The argument is that the provision regarding notice of accident states that notice shall be given "to The Travelers or any of its authorized agents," whereas the provision regarding suit papers requires that they be forwarded to "The Travelers," with no mention of its authorized agents. Such a distinction is precluded by the provision of the Insurance Code, quoted earlier, which mandates that notice to the agent is notice to the insured. MCLA § 500.3008 (Stat Ann 1957 Rev § 24.13008).

[11] A corollary of the historically strict application of the 4-month limitation on setting aside default judgments (footnote 3, *supra*) has been liberal setting aside of default judgments within the 4-month period. Judge Wickens stated on the record in the garnishment action that he would have "automatically" set aside the default judgment if application had been made within 4 months of the entry of judgment.

berg and Travelers, and as to prejudice to the insurer from delay in forwarding suit papers. If the jury believed Mrs. Swanberg, as it was entitled to, it could reasonably have concluded, that Travelers was not prejudiced by Mrs. Swanberg's delay in forwarding the suit papers, indeed that the only prejudice, if any, resulted from the insurer's own inaction. We therefore hold that Travelers was not entitled to a directed verdict of nonliability in the garnishment action.

The Court of Appeals is reversed and the case remanded to Manistee County Circuit Court for reinstatement of that court's judgments. Plaintiffs-appellants shall have costs.

ADAMS, T. E. BRENNAN, and T. G. KAVANAGH, JJ., concurred with T. M. KAVANAGH, C. J.

BLACK, J., concurred in the result.

SWAINSON and WILLIAMS, JJ., did not sit in this case.