KERMANS v PENDLETON

1. INSURANCE—POLICY EXCLUSIONS—BUSINESS PURSUITS—GUNSHOT INJURIES.

A homeowner's insurance policy which excludes coverage for the business pursuits of the insured does not cover a gunshot injury inflicted on a patron of the insured's tavern by the insured where the gun was kept in the tavern, the shooting was related to the physical safety of the tavern and its patrons, and the insured was engaged in his business pursuits at the time of the shooting.

2. INSURANCE—POLICY EXCLUSIONS—INTENTIONAL INJURIES—GUNSHOT INJURIES.

An insurance policy which excludes injury caused feloniously or intentionally by an insured does not cover a gunshot injury inflicted by the insured where the act was intentional and the actual results could have been anticipated.

3. INSURANCE—NOTICE OF CLAIM—REASONABLENESS—BURDEN OF PROOF—PREJUDICE.

Mere delay in giving notice to the insurer of a claim against the insured, as required by an insurance policy, does not result in a forfeiture since notice provisions in insurance policies have been interpreted to require notice within a reasonable time; prejudice to the insurer is a material element in determining whether notice was reasonably given, and the insurer has the burden to demonstrate the prejudice.

4. INSURANCE—NOTICE OF CLAIM—PREJUDICE.

An insurance company was materially prejudiced by the failure of an insured to give notice of a shooting within a reasonable time after it occurred because the insurer had no opportunity for physical examination of the injured party, no opportunity to determine if there was an obligation to defend a suit brought by the injured party against the insured or if there was a viable affirmative defense, and no opportunity to participate in

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 44 Am Jur 2d, Insurance §§ 1538, 1548.
[3, 4] 44 Am Jur 2d, Insurance §§ 1483, 1975.

> a decision by the insured to consent to a judgment for the injured party.

Appeal from Wayne, Michael L. Stacey, J. Submitted May 14, 1975, at Detroit. (Docket No. 20368.) Decided July 21, 1975.

Complaint by Odell Kermans and Janet Kermans against Gene B. Pendleton for damages arising out of a gunshot injury. Judgment for plaintiffs. Writ of garnishment filed against Allstate Insurance Company to satisfy the judgment. Summary judgment for Allstate. Plaintiffs appeal. Affirmed.

*Louis Demas,* for plaintiffs.

*Garan, Lucow, Miller, Lehman, Seward & Cooper, P. C.,* (by *John C. Patrick, Jr.),* for garnishee-defendant Allstate Insurance Company.

Before: T. M. BURNS, P. J., and M. F. CAVANAGH and O'HARA,* JJ.

T. M. BURNS, P. J. On or about August 30, 1970,[1] Gene Blair Pendleton was the owner and operator of the Neighborhood Inn, located in Detroit, Michigan. During that evening, plaintiff Odell Kermans was a patron in the inn. At approximately 2 a.m., defendant Pendleton shot and wounded the plaintiff. As a result of the shooting, plaintiff and his wife filed suit in Wayne County Circuit Court against Gene Pendleton, d/b/a Neighborhood Inn, and on March 28, 1973, a consent judgment in the

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] At the time of the shooting incident, the garnishee-defendant, Allstate Insurance Company, had issued a homeowner's policy to the Pendletons covering their home at 15011 Harrison, Allen Park, Michigan.

amount of $101,000 was entered against Gene Pendleton, d/b/a Neighborhood Inn, in favor of plaintiffs.

Subsequent to the consent judgment, defendant Pendleton filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of Michigan, listing the plaintiffs' claim as a debt. Defendant was adjudicated a bankrupt on April 12, 1973, and was discharged in bankruptcy on August 17, 1973.

Seeking to collect the $101,000 from some available source, plaintiffs caused a writ of garnishment to be issued against Allstate Insurance Company (hereinafter Allstate) on May 31, 1973. Allstate denied liability on the basis of exclusions contained in the homeowner's policy issued to defendant. At the trial court, both plaintiffs and Allstate filed motions for summary judgment. On April 17, 1974, the trial court filed an opinion in which it found that plaintiffs had no cause of action against Allstate. In accordance with that opinion, an order granting summary judgment in favor of Allstate and against the plaintiffs was filed on April 25, 1974. This appeal followed.

Plaintiffs claim that the trial court erred in granting Allstate's motion for summary judgment. Plaintiffs argue that the trial court erred in finding that the exclusions contained in the homeowner's policy were applicable to this case. We disagree.

The insurance policy in question provides in pertinent part as follows:

"COVERAGE X
"Family Liability Insurance
"*Division 1—Personal Liability.*
"Allstate will pay for an Insured all damages which

the Insured shall become legally obligated to pay because of:

"1. bodily injuries sustained by any person

\* \* \*

"EXCLUSIONS

*"This Section II does not apply:*

"1(a) to any business pursuits of an Insured, except activities therein which are ordinarily incident to the nonbusiness pursuits, but this subdivision (a) shall not apply to the occasional or part-time business pursuits of an Insured who is a student under 18 years of age;

\* \* \*

"(c) to any act or omission in connection with premises, except as defined, which are owned, rented or controlled by an Insured, but this subdivision (c) shall not apply with respect to bodily injury sustained by a residence employee arising out of and in the course of his employment by an Insured;

\* \* \*

"3. Under Divisions 1 and 2 of Coverage X and Coverage Y, to bodily injury or injury to or destruction of property caused feloniously or intentionally by or at the direction of an Insured \* \* \* ".

As to the business-pursuit exclusion, we agree with the trial court's finding that defendant Pendleton was engaged in his business pursuit at the time of the shooting and that but for this business pursuit, the shooting would not have occurred. The gun was kept in the bar and linked to it. As the trial court pointed out, the shooting incident was related to the physical safety of the bar and its patrons. Therefore the trial court's finding that exclusion 1(a) of the policy applies to this case was correct.

The trial court, in reference to exclusion 3 of the policy, opined that under the facts and circumstances of this case, plaintiffs' distinction between intended felonious acts and unintended felonious

results was a distinction without a difference. Plaintiffs, relying upon *Hawkeye Security Insurance Co v Shields,* 31 Mich App 649; 187 NW2d 894 (1971), and *Vermont Mutual Insurance Co v Dalzell,* 52 Mich App 686; 218 NW2d 52 (1974), contend that exclusion 3 is inapplicable because the aforementioned distinction does not exist in the case at bar. We find the trial court's reasoning more persuasive. *Hawkeye* and *Dalzell* are distinguishable in that in those cases, while the actions of the defendants were intentional, the results produced by those acts were not. Here, the trial court found that both the act and the result were intentional when it said:

"There was no allegation of self-defense or accident on behalf of the Principal Defendant, and this Court has no difficulty in determining that where there is no allegation of provocation, negligence or accident, that the pointing of a firearm at another human being and discharging same is of itself an intentional act, and one whereby the actual result could be anticipated, and thus outside the scope of the instant policy. See *Burton v Travelers Insurance Co* 341 Mich 30 [67 NW2d 54] (1954), and *Putman v Zeluff,* 372 Mich 553 [127 NW2d 374] (1964)."

Therefore, we hold that the trial court correctly held exclusion 3 applicable to this case.

Although we have resolved the first two questions in Allstate's favor, we find it desirable to comment on another issue raised by the plaintiffs, namely, whether defendant Pendleton's failure to comply with the notice requirements of the insurance policy prejudiced Allstate.

The policy provides in relevant part as follows:

"CONDITIONS

\* \* \*

"4. *Notice:* In the event of accident or occurrence, *written notice* containing all particulars shall be given by or for the Insured to Allstate *as soon as practicable.* If claim is made or suit is brought against the Insured, *he shall immediately forward to Allstate* every demand, notice, summons or other process received by him or his representative.

"5. *Action Against Allstate:* No action shall lie against Allstate until after *full compliance with all the terms of this policy* applicable to Section II \* \* \* .

\* \* \*

"7. *Assistance and Cooperation:* Under Coverage X, the Insured *shall cooperate* with Allstate, *disclosing all pertinent facts known or available to him,* and upon Allstate's request shall attend hearings and trials, and shall assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses, and in the conduct of suits." (Emphasis added.)

Allstate was not served with notice of this action until service of the writ of garnishment, almost 3 years after the shooting. The purpose of provisions in insurance contracts requiring the insured to give the insurer prompt notice of accident or suit is to allow the insurer to make a timely investigation of the accident in order to evaluate claims and to defend against fraudulent, invalid or excessive claims. *Wendel v Swanberg,* 384 Mich 468, 477; 185 NW2d 348 (1971), *Wehner v Foster,* 331 Mich 113; 49 NW2d 87 (1951). Mere delay in giving the required notice does not result in a forfeiture since such provisions have been interpreted to require notice within a reasonable time. *Wendel, supra, Kennedy v Dashner,* 319 Mich 491; 30 NW2d 46 (1947). Prejudice to the insurer is a material element to be considered in determining whether notice is reasonably given, *Wendel, supra, Wehner, supra,* and the insurer has the burden to

demonstrate such prejudice. *Wendel, supra, Kennedy, supra.*

Applying these principles to the case at bar, we are of the opinion that the trial court correctly found that Allstate was materially prejudiced by defendant Pendleton's failure to comply with the policy's notice provision when it stated:

"It would appear that the Garnishee Defendant had no opportunity for physical examination of the Plaintiff to determine the nature of the injuries, no opportunity to determine if there was a viable affirmative defense; nor indeed the opportunity to determine whether or not there was an obligation to defend, which would have given the Garnishee Defendant the opportunity and option of protecting its interests with a reservation of rights. * * * It would also appear to this Court that the decision of the Principal Defendant to consent to a judgment might not have been consented to by the Garnishee Defendant were it aware of such an action."

For all the reasons stated herein, the judgment of the trial court is affirmed. Costs to garnishee defendant.