**USAA CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**Christopher SCHNEIDER and John P. McEnroe, Jr., Defendants.**

**No. 83 Civ. 5186.**

United States District Court, E.D. New York.

Sept. 11, 1985.

John Young, Porzio, Bromberg & Newman, New York City, for plaintiff USAA Cas. Ins. Co.

William Sandback, Sandback & Birnbaum, Garden City, N.Y., for defendant Christopher Schneider.

Martin London, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant John McEnroe.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

USAA Casualty Insurance Company ("USAA") brings this action seeking a declaration that it is not obligated to insure John P. McEnroe, Jr. ("McEnroe") for damages that may arise from an incident during a match at the 1983 United States Open Tennis Championship. Specifically, USAA wishes to be absolved from responsibility with regard to a suit brought by Christopher Schneider ("Schneider"), a spectator at that match. McEnroe, in return, argues that he is covered by a homeowner's policy issued to him by USAA in April, 1983, to be effective for one year. This case is before me on cross-motions for summary judgment.[1] Because "there is no genuine issue as to any material fact," Fed.R.Civ.P. 56(c), summary judgment will be granted in favor of the plaintiff.

The pertinent facts of this case are set forth adequately by McEnroe:[2]

2. On August 30, 1983, McEnroe competed in a first round match of the men's singles against Trey Waltke. Throughout the match Schneider was pulling for McEnroe's opponent, Waltke. In the third set, the score stood at one set apiece and each had two games in the third set. Waltke had service in the fifth game. They played the first point which was won by Waltke so that the score stood at 15–0.

3. After play on the point had been concluded and in response to Schneider's repeated heckling, McEnroe departed from the playing court and approached the box in which Schneider was sitting. The two exchanged words. At the time of his departure, McEnroe's hand waved in the air and some grains of rosin[3] (a material used by athletes to absorb perspiration), flew in Schneider's general direction. Schneider asserts he was touched by them. The altercation between the two men lasted several moments.

4. After conclusion of the incident, McEnroe returned to the playing court. The match resumed where it had left off in the fifth game of the third set, with Waltke leading McEnroe 15–0. Play continued for some time and McEnroe ultimately defeated Waltke in the five set match, by a margin of three sets to two.

Having bested Waltke on the tennis court that day, McEnroe was soon faced with two new court battles. In October, 1983 Schneider served McEnroe with a summons and complaint in a New York state court action, recounting the incident described above and seeking damages of $6,000,000.00. In November, 1983, USAA, having been notified by McEnroe of his upcoming match with Schneider for the purpose of having USAA defend and indemnify him, brought this action.

The sole legal issue presented is whether the facts just described entitle McEnroe to protection under the homeowner's policy mentioned earlier. The relevant portions of that policy are as follows:

## SECTION II—LIABILITY COVERAGES

### COVERAGE E PERSONAL LIABILITY

If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* ... to which this coverage applies, [USAA] will:

a. pay up to [its] limit of liability for the damages for which the *insured* is legally liable; ...

### SECTION II—EXCLUSIONS

1. *Coverage E—Personal Liability* ... do[es] not apply to *bodily injury* ...:

\* \* \* \* \* \*

---

1. Schneider, though nominally a defendant, has taken no part in these proceedings.

2. Pursuant to Local Rule 3(g), each party has submitted a statement of the material facts which it considers undisputed.

3. In his separate suit against McEnroe, Schneider alleges that the substance was "saw-dust type material." This discrepancy has no relevance to the outcome of this case.

b. arising out of *business* pursuits of any *insured* ...

This exclusion does not apply to:

(1) activities which are ordinarily incident to non-*business* pursuits ...

USAA maintains that any injury that may have been sustained by Schneider "arose out of" McEnroe's "business pursuits", i.e., his competition in a professional tennis tournament, and is thus excluded from coverage. McEnroe argues that his interaction with Schneider, although occurring in the midst of a tennis match, is an activity "ordinarily incident to non-business pursuits," and is therefore embraced by the exclusion.

In interpreting an insurance policy, it is a well-settled principle that "[w]hen the terms used are clear and unambiguous, they are generally to be taken and understood in their plain, ordinary and proper sense." *McGrail v. Equitable Life Assur. Soc.*, 292 N.Y. 419, 424, 55 N.E.2d 483, 486 (1944). Reading McEnroe's homeowner's policy "as a layman would read it and not as it might be analyzed by an attorney or insurance expert," 13 Appleman, *Insurance Law and Practice*, § 7384 at 99 (1976), it is indisputable that the tennis match on August 30, 1983 was a "business pursuit" with regard to McEnroe and that any injury suffered by Schneider during the match "arose out of" this pursuit. As to the first point, there is simply no question that McEnroe is a professional tennis player who participated in the 1983 U.S. Open to compete for prize money and to advance his career. Indeed, in his answer, McEnroe concedes that "he played the August 30 match for the purpose of engaging in a business pursuit." Answer of Defendant McEnroe ¶ 15.

As to the second point, however, McEnroe denies that "the incident ... arose out of a business pursuit within the meaning of the insurance policy." *Id.* McEnroe argues that non-business activities do not become business pursuits, nor may they be said to arise out of such pursuits, simply because they occur in a business setting. *See, e.g., Farmers Insurance Exchange v.*

*Sipple*, 255 N.W.2d 373, 375 (Minn.1977) ("Personal acts ... do not become part of a business pursuit ... merely because performed during business hours and on business property.") Yet McEnroe's own rendition of the facts belies the assertion that his altercation with Schneider was merely coincidental to the tennis match. The observation that "Schneider was pulling for McEnroe's opponent" and the admission that McEnroe approached Schneider "*in response to* [his] repeated heckling*" (emphasis added) make plain that, in ordinary parlance, the altercation did "arise out of" the tennis match. Put another way, "but for this business pursuit, the [altercation] would not have occurred." *Kermans v. Pendleton*, 62 Mich.App. 576, 233 N.W.2d 658, 660 (1975).

The factual setting of this case also undermines McEnroe's reliance on the clause excepting "activities which are ordinarily incident to non-business pursuits" from the reach of the "business pursuits" exclusion. McEnroe contends that his altercation with Schneider should be considered a non-business activity because it was a "frolic and detour" from the tennis match, not in furtherance of any business pursuit. Citing a line of cases involving various pranks and practical jokes, McEnroe asserts that a "momentary deviation from ... 'business pursuits'—... horseplay ...—should be classified as an activity ordinarily incident to non-business pursuits...." *State Farm Fire & Cas. Co. v. National Union Fire Ins. Co.*, 87 Ill.App.2d 15, 230 N.E.2d 513, 515 (1967). Whether or not these cases are correctly decided, they are simply inapposite to the facts at issue. McEnroe can claim a "momentary deviation" from his business pursuit only by defining that pursuit far too narrowly. Unlike the occupations involved in the "horseplay" cases— *State Farm, supra* (elevator repairman), *Morrill v. Gallagher*, 370 Mich. 578, 122 N.W.2d 687 (1963) (general manager), *Jackson v. Lajaunie*, 270 So.2d 859 (La.1972) (service station operator)—professional tennis is a form of entertainment whose very existence depends on the participation of

third parties, its fans.[4] McEnroe's attempt to describe his business pursuit as including only the course of play, and excluding all interaction with spectators, is unrealistic. The attitude of the fans, whether hushed in a close match, or effusive in their support of a local favorite, is integral to the business of professional tennis. Likewise, like a baseball player doffing his cap after a home run, or a wide receiver dancing in the end zone after a touchdown, a tennis player plies his trade and gains an audience not only by gracefully executing lobs and passing shots, but also by graciously accepting the cheers of the crowd after a hard-fought victory.

The understanding that the business of tennis is not confined solely to the game of tennis is not lost on those who promote that business. The Tournament Regulations of the Men's International Professional Tennis Council provide, for example, that "[a] player participating in the finals of a tournament ... must attend and participate in the final ceremonies after the match ..." Art. V, § I. Perhaps more to the point are rules directing that players shall not verbally or physically "abuse any ... spectator ... within the precincts of the tournament site." Art. V, §§ Q, R. Violations of these latter rules during a match may subject the player to penalties ranging from a warning to a default of the entire match. Art. V, §§ Q, R. V. Because the incident with Schneider could have had an immediate and substantial effect on McEnroe's business pursuit, i.e., the tennis match in which he was participating, it defies common sense to argue that this business pursuit was somehow suspended for the "several moments" during which the incident took place. Instead, the only reasonable conclusion is that, in the unambiguous language of the policy at issue, any injury that Schneider may have suffered did arise out of McEnroe's business pursuit.

For the reasons stated herein, plaintiff's motion for summary judgment is granted.

So Ordered.

4. At oral argument, it was stipulated that tennis is a spectator sport.