907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
STEELCASE, INC., Plaintiff-Appellant,
v.
AMERICAN MOTORISTS INSURANCE COMPANY and Guaranty National
Insurance Company, Defendants-Appellees.
 No. 89-1344.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1990.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and FRANK J. BATTISTI, District Judge.*
 PER CURIAM.
 
 
 1
 Steelcase, Inc. appeals the district court's granting summary judgment to defendants American Motorists Insurance Company (AMICO) and Guaranty National Insurance Company (GNIC) in this diversity insurance dispute over the meaning of the Michigan requirement that an insurer show prejudice in order to assert a defense of untimely notice. We affirm the decision of the district court.
 
 
 2
 * Steelcase is a maker of office furniture and office systems with headquarters in Michigan. On or before November 11, 1983, 3,000 gallons of paint solvent leaked from an underground tank into the ground at the Steelcase furniture painting plant in Tustin, California.[1] Steelcase notified Richard Morris, its insurance broker, within days of the discovery of the leak. Steelcase and Morris decided not to notify or file a claim with AMICO and GNIC at that time, hoping that cleanup costs would be minimal and desiring to avoid increased premiums. Environmental officials were notified. The California Water Quality Control Board (Water Board) assumed lead responsibility for remedying the problem. After several meetings with Steelcase, the Water Board held that Steelcase was responsible for the cleanup and required Steelcase to submit a proposal to the Water Board. After several months of study by environmental experts, Steelcase produced a report in May 1984 and a proposal in December 1984. The Water Board approved the proposed course of action and a groundwater treatment system was put into operation at the site in August 1985. It is still in operation. According to the district court, by the spring of 1985 Steelcase had expended approximately $581,000 on cleanup costs. The affidavit of Steelcase financial officer Thomas B. Trollan indicates that by December 1988, cleanup expenditures had exceeded $936,000.
 
 
 3
 Steelcase finally notified AMICO of the leak on December 5, 1985, more than two years after it was discovered, and requested coverage for costs incurred as a result of the cleanup. On February 11, 1986, AMICO denied coverage on a variety of grounds. On March 24, 1987, GNIC notified Steelcase that, as an umbrella carrier, it followed the primary carrier, and therefore it would also deny coverage. Neither firm conducted an investigation of the Tustin facility.
 
 
 4
 The notice provision in Steelcase's policy with AMICO states:
 
 
 5
 Insured's Duties in the Event of Occurrence, Claim or Suit. (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
 
 
 6
 The GNIC policy contained a similar clause requiring notice "as soon as practicable."
 
 
 7
 On May 18, 1987, Steelcase brought this action against AMICO and GNIC for damages caused by their refusal to provide coverage and for a declaratory judgment that they were liable to the extent of their policy limits for future expenses incurred by Steelcase in connection with the cleanup of the leak. AMICO and GNIC denied coverage because of late notice. They also asserted several affirmative defenses: (1) Steelcase's claim was not based on property damage as defined in the policies, and was thus not covered; (2) the incident was not an "occurrence" as defined in the policies; (3) the policies only covered claims for costs associated with damage awards against the insured and no one made a claim for damages against Steelcase; (4) coverage was barred under the policies' pollution exclusion clauses; (5) the policies excluded coverage for damage to property owned by the insured, and (6) the policies did not cover voluntary payments made by the insured.
 
 
 8
 Both sides moved for summary judgment after discovery. The district court granted summary judgment for AMICO and GNIC on the basis of Steelcase's failure to give timely notice. Relying on Michigan law, the court found that AMICO and GNIC had carried their burden of demonstrating that they had been prejudiced by the delayed notice.
 
 II
 
 9
 The parties do not dispute the district court's finding that Michigan law governs this case. Under Michigan law, late notice to an insurer is not a defense to coverage unless the insurer can show it has been prejudiced by the delay. Wendel v. Swanberg, 384 Mich. 468, 185 N.W.2d 348 (1971); Wehner v. Foster, 331 Mich. 113, 49 N.W.2d 87 (1951); Weller v. Cummins, 330 Mich. 286, 47 N.W.2d 612 (1951); Kennedy v. Dashner, 319 Mich. 491, 30 N.W.2d 46 (1947); Wood v. Duckworth, 156 Mich.App. 160, 401 N.W.2d 258 (1986); Burgess v. American Fidelity Fire Ins. Co., 107 Mich.App. 625, 310 N.W.2d 23 (1981); Kermans v. Pendleton, 62 Mich.App. 576, 233 N.W.2d 658 (1975). The insurer bears the burden of showing prejudice.
 
 
 10
 We agree with the district court that AMICO and GNIC were prejudiced in presenting a defense to Steelcase's claim in at least four ways. First, they were deprived of an opportunity to investigate the incident properly. By the time appellees were notified of the leak, the tank in which the paint solvent was stored had been destroyed. Although the underground pipe that Steelcase alleges caused the leak still exists, an examination of the tank was vital to appellees' defense; if the discharge of solvent resulted from a steady leak in the tank, rather than a sudden and accidental bursting of the pipe, then the pollution exclusion clause of the policies would have barred coverage. Without examining the tank, appellees cannot contest Steelcase's version of events. In addition, certain drums in which Steelcase stored solvent were no longer available for inspection by the time appellees received notice.
 
 
 11
 Second, appellees were denied the opportunity to participate in Steelcase's remedial efforts. Steelcase hired consultants and developed a cleanup plan that cost hundreds of thousands of dollars before notifying the insurers of the leak. Third, after formulating and presenting its cleanup plan, Steelcase consented to the entry of a cleanup and abatement order by the California Water Quality Control Board that required it to take remedial actions. The time to appeal from that order has passed, but the obligation to comply with the terms of the order continues. Fourth, the delay and the destruction of certain property effectively deprived appellees of the opportunity of investigating whether claims against the manufacturers of the pipe or storage tank were available.
 
 
 12
 Steelcase nevertheless contends that AMICO and GNIC have not shown prejudice. It argues that the court may infer from the evidence that AMICO would not have acted differently even if it had received timely notice of the leak and that, therefore, AMICO was not prejudiced by the delay. (It would follow that GNIC, as the umbrella carrier, was also not prejudiced.) When it received notice, AMICO could have written a reservation of rights letter, which would have allowed it to investigate the occurrence without admitting liability. Instead, it simply denied coverage. In its answer to the Steelcase complaint, AMICO put forward independent grounds for its denial of coverage that had nothing to do with the delayed notice. Steelcase argues that these grounds indicate that AMICO would have denied coverage and not investigated the occurrence or participated in the cleanup in any event. Moreover, on two later occasions Steelcase has filed timely claims in other matters; in both cases AMICO did not investigate but simply denied coverage for failure to come within the policy terms. Appellant analogizes the present situation to that in Bibb v. Dairyland Ins. Co., 44 Mich.App. 440, 205 N.W.2d 495 (1973), where the court ruled against an insurer who received notice of a legal action against the insured only after default judgment had been entered because the insurer failed to act after it received notice and failed to show it would have done anything differently had it received notice earlier.
 
 
 13
 This case is very different from Bibb. In that case, the insurer received timely notice of the accident--but not of the subsequent lawsuit by a third party--and could easily have undertaken its own investigation of the events. Not only were AMICO and GNIC unaware of the leak at the time it occurred, but by the time they did receive notice, the destruction of relevant property had made an investigation virtually useless for the purposes most likely to result in a positive result for the insurers. Once the storage tank was destroyed, the particular information that would be most likely to indicate a lack of coverage under the policies was no longer available. Thus, although there may still have been much general information to be obtained from an investigation by the insurers, their incentive to undertake one was greatly diminished. Therefore, appellees' failure to undertake an investigation upon receiving notice two years after the accident is not as probative of the issue of prejudice as appellant would suggest. We cannot conclude that AMICO and GNIC would not have undertaken an investigation after timely notice simply because they did not do so after delayed notice.
 
 
 14
 Steelcase next argues that appellees' assertions of prejudice raise questions of material fact that should not have been resolved by summary judgment. Steelcase argues that in granting AMICO's motion for summary judgment, the district court went beyond conclusions of law and made determinations of fact. The district court found that the late notice had prevented AMICO from conducting a contemporaneous investigation of the incident. It noted that "[s]ince the storage tank has been destroyed, there is no way to determine whether it was at fault for the spill." Steelcase maintains to the contrary that there is a way for appellees to determine whether the tank was at fault. Within weeks of the leak, Steelcase hired an independent testing firm to test the tank. The firm reported no leakage from the tank. That report was made available to appellees. Thus, Steelcase argues that the integrity of the tank presents an issue that should go to the finder of fact. Steelcase also made available documents describing the incident and the details of the cleanup operation. The district court stated that the documents prepared by Steelcase were "clearly inadequate to compensate for the insurers' inability to contemporaneously investigate the incident." Steelcase describes that statement as a fundamental finding of fact. It notes that the court conducted no inquiry to determine in what particulars the documents were inadequate.
 
 
 15
 We disagree with appellant's assessment of the substance of the district court's findings. An investigation of the storage tank conducted by a third party hired by Steelcase was insufficient to protect appellees from prejudice in their defense against Steelcase's claim. Whatever the quality of the report of the independent testing company that examined the tanks shortly after the leak, appellees could not have the same confidence in it that they would have in the results of their own investigation. Nor could they be certain that the independent tester investigated with the same motivations and the same attention to possibly exculpatory details. The purpose of an insurance policy notice provision is "to allow the insurer to make a timely investigation of the accident in order to evaluate claims and to defend against fraudulent or excessive claims." Wendel, 384 Mich. at 477, 185 N.W.2d at 352. That purpose was subverted by the delay in giving notice of the leak. An investigation by an independent agent is a poor substitute. Although the Michigan courts have faulted insurers for failing to investigate an accident after delayed notice where relevant information could still be obtained, we do not believe that they would find a failure to show prejudice where an insurer had no way to conduct its own investigation on a matter of relevance to its defense. Even if a jury were to conclude that the independent tests authorized by Steelcase were accurate and reliable, that would not change our conclusion that AMICO and GNIC were prejudiced by the inability to conduct their own investigations.
 
 
 16
 Steelcase makes two errors in its characterization of Michigan law on the issue of prejudice to an insurer. First, it suggests that the determination of whether an insurer was prejudiced by delayed notice is always a jury question. That is not the case. Although the issue of prejudice is frequently left to the factfinder, it is possible for courts to find, as a matter of law, that an insurer was prejudiced. In Wehner v. Foster, 331 Mich. 113, 49 N.W.2d 87 (1951), the Michigan Supreme Court held that it was error to submit to a jury the question of prejudice where notice to the insurer was seven months late and the insurer had no opportunity to investigate the accident. See also Kermans v. Pendleton, 62 Mich.App. 576, 233 N.W.2d 658 (1975) (affirming summary judgment for insurer on issue of prejudice); Ward v. Travelers, No. 86-1694 (6th Cir. December 7, 1987) (unpublished per curiam) (same).
 
 
 17
 Second, Steelcase proposes the rule that in order for an insurer to show prejudice, it must show that but for the delayed notice, it would likely have prevailed on the merits. That standard was used by this court in an unpublished decision interpreting Michigan law. Stonewall Ins. Co. v. Webb, No. 83-1659 (6th Cir. October 22, 1984) (unpublished per curiam). As an unpublished opinion, that decision is not binding on this court, and in fact, Stonewall misstates the rule. Stonewall cites Anderson v. Kemper Insurance Co., 128 Mich.App. 249, 340 N.W.2d 87 (1983) and Burgess v. American Fidelity Fire Ins. Co., 107 Mich.App. 625, 310 N.W.2d 23 (1981). However, neither of those cases employed the rule that the insurer must show it would have prevailed on the merits. Nor is it applied in other Michigan cases. A better formulation of the standard the Michigan courts appear to use would be that the insurer must show that the delay in notice materially affected its ability to defend against the claim.
 
 
 18
 The test proposed by Steelcase is particulary inappropriate in this case because Steelcase's destruction of relevant property makes it especially difficult for AMICO and GNIC to show that they would have prevailed on the merits. The loss of the storage tank, for instance, not only interfered with appellees' ability to make a pollution clause defense at the time they received notice, but it also now interferes with their ability to show that such a defense would have been successful. It would be unfair to require appellees to prove that they would prevail on the merits absent the delayed notice where the delay itself caused destruction of the very evidence with which they might make such a showing.
 
 
 19
 Steelcase relies particularly on the cases of Anderson v. Kemper Insurance Co. and Burgess v. American Fidelity Fire Ins. Co. The courts in Anderson and Burgess held the insurer had failed to make the requisite showing of prejudice resulting from the insured's failure to comply with the terms of the policy. The factual situations in those cases were quite different from the situation here, and the balance of interests was correspondingly different. In each, a default judgment had been entered against an insured automobile driver in favor of a third party who had been injured as a result of an accident with the insured. In each, the injured party sought to recover its judgment from the insurer, which defended on the ground that the insured had failed to give timely notice of the action (Anderson) or had failed to cooperate in the defense of the action (Burgess). And in each, the court found that the insurer had failed to take action available to it which might have affected the outcome in its favor. In both, the courts expressed a concern that they balance the interests of the innocent injured party against the insurer's interest in having its insureds comply with the terms of the policies. On balance, the interests of the injured parties won.
 
 
 20
 This case differs from Anderson and Burgess in at least three important respects: there is no injured third party that will be left uncompensated if appellees avoid coverage; Steelcase is not an unsophisticated insured; and the two-year delay in notification and the resulting prejudice to appellees in defending this case were much greater than in Anderson or Burgess.
 
 
 21
 Steelcase's objection to the holding of the district court that prejudice had resulted from the destruction of the storage tank only addresses one part of the district court's reasoning as to the prejudice suffered by appellees. The court also found a ground for summary judgment in the effect that late notice had on the insurers' ability to participate in the discussions with the California Water Quality Control Board and the development of a cleanup plan. The bulk of the costs incurred so far by Steelcase as a result of the spill--and therefore most of appellees' potential liability--resulted directly from the cleanup plan put into place after negotiation with the Water Board. The insurers were denied the ability to participate in the decisions that bore directly on the amount of Steelcase's liability for the leak. Had the insurers been timely informed of the leak, they could have decided whether to play a role in the development of remedial measures, with a view to mitigating the losses under the policy. Such participation was contemplated in the insurance policy. The AMICO policy stated that "[t]he insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense...." The purpose of that clause was to give the insurer the exclusive right to make any settlement of a claim for which it was liable. Steelcase, by its delay in giving notice, denied AMICO and GNIC that right.
 
 
 22
 Steelcase maintains that appellees would not have become involved in the Water Board discussions or the cleanup plan in any event, because they would simply have denied coverage. That is speculative. It is true that appellees cite several grounds for their belief that coverage did not exist under the policies, but to imply that appellees would not have taken a role in the decisions affecting Steelcase's ultimate liability is unfair and unrealistic. Even if AMICO and GNIC believed coverage did not exist under the policies, there are reasons the insurers might have decided to undertake a defense of Steelcase in its dispute with the Water Board. For instance, the insurers might have decided they could sufficiently minimize the cost of the cleanup plan to offset the projected costs of litigation against Steelcase over the issue of coverage. Presumably, Steelcase would have the court present to a jury the question whether, based on the evidence in the record, appellees would indeed have made such a calculation. The problem with that approach is that the evidence necessary to make such a calculation no longer exists. It is doubtful whether appellees themselves could now answer the question accurately which decision they would have made at the time of the leak.
 
 
 23
 It is not the quality of the studies and documents delivered by Steelcase to appellees that is at issue, but the fact that all such material must be inferior, in appellees' view, to an investigation they conducted themselves. That is because they can never be certain of the quality of the materials. Even if a finder of fact were to conclude that the independent study of the integrity of the storage tank was of the highest quality, it would still be correct, as a matter of law, that AMICO and GNIC were prejudiced in establishing a defense by not being informed of the incident until it was too late to conduct their own investigations of the tank.
 
 
 24
 Again, it would be inappropriate to ask a jury to determine whether AMICO and GNIC would have decided whether to undertake an active defense of Steelcase at the time of the leak. The question to be determined as a matter of law is not whether appellees definitely would have acted differently had they received timely notice, but whether they were prejudiced in deciding whether to act and how to act. It is possible to say that AMICO and GNIC were prejudiced in their ability to make an intelligent decision whether and how to undertake a defense against a claim--or alternatively, to reduce the cost of a cleanup--without determining what that decision would have been. In that sense, we hold as a matter of law that appellees were prejudiced by the lack of timely notice.
 
 III
 
 25
 Steelcase contends in the alternative that it complied with the notification provisions of the insurance policies by notifying agent Richard Morris of the leak shortly after it was discovered. It is Steelcase's position that Morris was an agent for AMICO and that by giving notice to Morris, it effectively gave notice to AMICO. Steelcase now argues that the existence and the extent of Morris's agency for AMICO is a question of fact that should not have been disposed of by summary judgment. The argument is based on the fact that Morris worked for the James S. Kemper Agency, which was an agent for AMICO, and that Morris's signature appears on the signature page of the insurance policy as the "licensed resident agent" of AMICO, identified elsewhere as the "duly authorized representative of the [insurance] company."
 
 
 26
 On their face, such indicia of agency seem to raise questions of fact, but on closer inspection of the facts and testimony in this case, no questions remain. We agree with the district court's analysis in rejecting Steelcase's argument. Such incidents of agency are relevant factors in determining the nature of a possible agency relationship where the nature of the relationship is otherwise in doubt. But here the nature of Morris's activity is clear. He represented Steelcase's interests and was at all times the agent of Steelcase with regard to the giving of notice. Morris's testimony reveals that he acted as a broker for Steelcase, comparing the coverage offered by several insurers before selecting AMICO, and that he followed Steelcase's instructions with respect to notifying insurers. Specifically, Morris met with Steelcase officials shortly after the accident and they jointly concluded that the insurers should not be notified. Later, when Steelcase decided to file a claim, it contacted Morris and charged him with presenting the claim to AMICO in the best possible light to encourage coverage. These facts not only indicate that Morris knew he was acting as Steelcase's agent in questions of notice, but also show that Steelcase knew that the initial notice to Morris absolutely would not inform AMICO that an accident had occurred. Although Morris signed the policy for AMICO, AMICO presented affidavit evidence that Morris was not its authorized agent for the purpose of receiving notice of claims.
 
 
 27
 Under the circumstances, no question of fact remains as to the nature and extent of Morris's agency with respect to questions of notice. The district court properly granted summary judgment for the insurers on that issue.
 
 IV
 
 28
 Accordingly, we affirm the decision of the district court in all respects.
 
 
 
 *
 The Honorable Frank J. Battisti, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 It was determined that the entire leak had probably occurred within the 24 hours prior to discovery on November 11, but in any event after November 5, when the tank had last been measured