239 So.2d 792

Ex parte John W. NEWBERN, d/b/a Nationwide Advertising Specialty Co., etc.

In re: STATE of Alabama

v.

John W. NEWBERN, d/b/a Nationwide Advertising Specialty Co., etc.

3 Div. 452.

Supreme Court of Alabama.

July 10, 1970.

M. R. Nachman, Jr., Montgomery, for petitioner.

MacDonald Gallion, Atty. Gen., Willard W. Livingston and B. Frank Loeb, Asst. Attys. Gen., for respondent.

BLOODWORTH, Justice.

We granted a writ of certiorari to the Court of Civil Appeals, 239 So.2d 780, to review its decision reversing and rendering three decrees of the Circuit Court of Montgomery County, in equity, which decrees set aside final assessments made by the State Department of Revenue against petitioner for Alabama use taxes covering periods totalling six years.

Nationwide petitioned for writ of certiorari following the overruling of its motion for rehearing by the Court of Civil Appeals. We granted the writ because the case involved construction of controlling provisions of the Federal Constitution and presented a question of possible conflict with prior decisions of this court on the same point of law. See Act No. 987, § 32, Acts 1969, appvd. Sept. 12, 1969. The case was orally argued May 12, 1970.

The issues presented are three: I. Whether the Court of Civil Appeals erroneously rejected the trial court's findings of fact in this case heard ore tenus; II. whether petitioner is, in the language of Title 51, § 792, Code of Alabama 1940, as last amended, a "seller engaged in making retail sales of tangible personal property for * * * use * * * in this state, who: * * * (c) solicits and receives purchases or orders by agent or salesman * * *" and thus liable to collect and remit the use tax to the State; III. whether making petitioner a use tax collector under the circumstances of this case violates the Due Process and Commerce Clauses of the United States Constitution. We affirm the decision of the Court of Civil Appeals, having concluded that the

answers to I and III are in the negative, and to II in the affirmative.

The facts upon which we base our review of this case, coming here on writ of certiorari, are those contained in the opinion of the Court of Civil Appeals. Clayton v. Ragsdale, 276 Ala. 321, 161 So.2d 804 (1964). Notwithstanding these facts are set out quite extensively in the Court of Civil Appeals' opinion, we think a short summary is appropriate here.

Petitioner Nationwide Specialty Company has been successively a sole proprietorship and a corporation with Texas as its place of business and state of incorporation. It is a jobber in the field of advertising specialties (items such as golf tees, key chains, shoe spoons, and pen and pencil sets) upon which advertising copy can be printed. Upon receiving and accepting in Texas an order for specialties, Nationwide issues a purchase order to a manufacturer, instructing the manufacturer to ship the goods directly to the buyer, at which time Nationwide is billed by the manufacturer. The order forms received by Nationwide state that the goods are purchased from Nationwide.

Nationwide's sole[1] contacts with Alabama were as follows:

■ Over 100 salesmen[2] in Alabama, to whom Nationwide furnished free samples, catalogs, order blanks, and other sales literature, solicited orders from Alabama customers and sent them to Nationwide. Generally, the buyers made payment directly to Nationwide, and the salesmen received a weekly commission check. Occasionally, the salesmen were

---

1. The opinion of the Court of Civil Appeals nowhere explicitly states that Nationwide had no place of business in Alabama, but this is inferrable from the fact that the assessments were made under subsection (c) of Title 51, § 792, rather than subsection (a) and the fact that Nationwide kept no merchandise in Alabama. Petitioner in brief says the State relies only on subsection (c) and

concedes subsections (a), (b) and (d) are inapplicable.

2. Whether these individuals are called salesmen, drummers, dealers, solicitors, representatives or brokers, we deem to be immaterial as the opinion will subsequently reflect. We shall call them salesmen for convenience.

asked to collect a tardy payment; and occasionally, they withdrew their commissions directly from customers' payments before sending the balance to Nationwide. The Alabama salesmen who testified said that they had become solicitors for Nationwide as a result of answering its advertisement for "salesmen" placed in a trade publication. Nationwide frequently referred to them as "salesmen" in its weekly newspaper "The Nationwide Pavement Pounder" sent exclusively to their salesmen. These salesmen solicited orders for companies other than Nationwide. The number soliciting in Alabama for Nationwide during the years at issue ranged from 80 to 119; of these, the number who earned in a year more than $600 in commissions varied from 5 to 10. At least one earned as much as $2,000 based on sales of $8,000.[3]

■ I. Nationwide first contends that the Court of Civil Appeals failed to follow our rule that when evidence is heard ore tenus by the trial court without a jury, its findings of fact will not be disturbed on appeal unless plainly erroneous or manifestly wrong.

In Department of Industrial Relations v. Walker, 268 Ala. 507, 510, 109 So.2d 135 (1959), we said that on review by certiorari we would not "examine the record and determine whether the Court of Appeals failed to give proper consideration to the rule of review that a trial court's findings from evidence taken orally before it is 'to be given the effect of a jury verdict and is not to be disturbed when there is evidence to support it.' It must be remembered that the Court of Appeals is a court of final appellate jurisdiction in this state and its decisions are reviewable by us only by certiorari. Our review is confined to the opinion, although at times we examine the record for a better understanding of the court's holding." The Court of Civil Appeals having stated the facts in its opinion, we will not look behind those facts to determine whether it erred in concluding that the trial court was plainly and palpably wrong in its findings of fact. Life & Casualty Ins. Co. of Tennessee v. Womack, 228 Ala. 70, 151 So. 880 (1933).

■ In addition, we note that the trial court's "findings of fact" which Nationwide contends were erroneously rejected by the Court of Civil Appeals, viz., that Nationwide lacks sufficient nexus with Alabama to be compelled to collect the Alabama use tax and that there was no "agent or salesman" of Nationwide who solicited and received purchases or orders, are actually mixed questions of law and fact. Although the Court of Civil Appeals stated that it found the trial court's findings of fact "plainly and palpably wrong," we think it might well have answered petitioner's contention by saying that it differed with the trial court not on the facts but on the application of settled legal principles to such facts.

Mr. Justice DeGraffenried's observation in Ex parte Shoaf, 186 Ala. 394, 64 So. 615 (1914), seems pertinent in this connection:

" * * * Sometimes there is a case of mixed law and fact—a case in which a conclusion of fact drawn from admitted evidence must determine the law —and in such a case, where the law is correctly applied by the Court of Appeals to its conclusion of fact, then its judgment in such a case will not be disturbed. It not infrequently occurs that two opposite yet entirely rational conclusions

---

3. Whether these figures alone reflect a substantial flow of goods into Alabama we need not determine since such a substantial flow is further "evidenced by the amount assessed against appellant [petitioner] on the statute's 3% basis over a period of but four [six] years." Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660. (The import of this factor will hereinafter appear in this opinion.) Based on the assessments, it would appear petitioner averaged doing approximately $50,000 worth of business annually in Alabama, or a total of $300,-000 for the six years.

may be drawn, by different minds, from the same state of facts, and in all such cases this court will abide by the conclusions which are drawn by the Court of Appeals from the facts."

■ II. Next, Nationwide argues that it is not a "seller engaged in making retail sales of tangible personal property for * * * use * * * in this state, who: * * * solicits and receives purchases or orders by agent or salesman" within the meaning of Title 51, § 792, supra; and that it therefore cannot be compelled to collect the use tax. Petitioner contends that its "dealers" are not "agents or salesmen" apparently on the theory that the statute requires that some "legal relationship" exist between "seller" and "agents or salesmen." That these salesmen or dealers spend only part of their working time soliciting for Nationwide and that they also solicit for companies other than Nationwide suggests to petitioner that they are self-employed and that there is no "legal relationship" between them and Nationwide.

We do not think the statute requires a "legal relationship" between seller and solicitor. The main thrust of Title 51, § 792(c), supra, seems to us simply to require solicitation of orders for the seller by persons within the state who are characterized as "agents or salesmen." We do not think that the legislature intended a seller conducting such solicitation to avoid collecting the use tax merely by showing that its salesmen failed to come within some technical definition of "salesman" or lacked some legal relationship with the out-of-state seller not articulated in the statute.

The Florida Supreme Court in Scripto, Inc. v. Carson, 105 So.2d 775 (1958), affirmed 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660, when that case was before it, answered a similar contention in this manner:

"In the instant case appellant Scripto enjoys the privilege of being represented in Florida by numerous commissioned jobbers. In advancing the business enterprise of the appellant these representatives enjoy the benefits and protection of the laws of the State of Florida. It is no answer to point out that the Florida representatives of the appellant operate and own independent businesses as commissioned jobbers. To the extent that they contact Florida consumers in the interest of advancing appellant's business and in bringing about sales of appellant's commodities to Florida customers they are just as much representatives of the appellant under the subject statute as if they were salaried employee solicitors operating pursuant to identical limitations of contract."

We think here that petitioner's salesmen were just as much its representatives under our statute as if they were salaried employee salesmen.

Nationwide appears to suggest that State v. Lane Bryant, Inc., 277 Ala. 385, 171 So. 2d 91 (1965); State v. West Point Wholesale Grocery Company, 284 Ala. 149, 223 So.2d 269 (1969); and Family Discount Stamp Co. of Ga., etc. v. State, 274 Ala. 322, 148 So.2d 218 (1963), place an added requirement in Title 51, § 792, that the out-of-state seller must have a sufficient nexus with Alabama. Though those cases do hold that a "nexus" is required under the United States Constitution, they do not say that a "nexus" requirement must be read literally into every Alabama taxing statute. The question whether Nationwide comes within the purview of the statute and the question whether the statute, as applied to Nationwide, is constitutional are separate questions. To the extent that the cases cited above are germane to the constitutional issues involved herein, they will be discussed below. We conclude that Nationwide comes within the intendment of Title 51, § 792(c), Code of Alabama, 1940, supra.

■ III. Nationwide insists that making it collect a use tax violates the Due Process and Commerce Clauses of the

United States Constitution. By the time of National Bellas Hess, Inc. v. Department of Revenue of the State of Illinois, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed. 505 (1967), the Supreme Court of the United States in a case involving the levy of a use tax could say:

> "National argues that the liabilities which Illinois has thus imposed violate the Due Process Clause of the Fourteenth Amendment and create an unconstitutional burden upon interstate commerce. These two claims are closely related. For the test whether a particular state exaction is such as to invade the exclusive authority of Congress to regulate trade between the States, and the test for a State's compliance with the requirements of due process in this area are similar. * * * As to the former, the Court has held that 'State taxation falling on interstate commerce * * * can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys.' * * * And in determining whether a state tax falls within the confines of the Due Process Clause, the Court has said that the 'simple but controlling question is whether the state has given anything for which it can ask return.'[4] * * * The same principles have been held applicable in determining the power of a State to impose the burdens of collecting use taxes upon interstate sales. Here, too, the Constitution requires 'some definite link, some minimum connection, between a state and the person, property

or transaction it seeks to tax.' Miller Bros. Co. v. Maryland, 347 U.S. 340, 344–345, 74 S.Ct. 535, 98 L.Ed. 744; Scripto, Inc. v. Carson, 362 U.S. 207, 210–211, 80 S.Ct. 619, 4 L.Ed.2d 660.[5] See also American Oil Co. v. Neill, 380 U.S. 451, 458, 85 S.Ct. 1130, 14 L.Ed.2d 1." [Notes supplied]

Nationwide argues that its nexus with Alabama is constitutionally insufficient. We believe Scripto, Inc. v. Carson, supra, establishes the contrary and that this case is controlled by *Scripto*. That case held constitutional an attempt by Florida to compel the seller Scripto, a Georgia corporation, to collect a Florida use tax on goods sold to Florida residents. The facts therein are so nearly identical to the case at bar that we shall set out only those facts which Nationwide insists amount to material distinctions. Scripto's brokers operated under written contracts with Scripto and in specific areas of Florida assigned to them by Scripto. Unlike Nationwide, Scripto manufactured the goods it sold. Scripto's brokers never handled cash although they occasionally accepted checks payable to Scripto which they forwarded to it with the order. Nationwide's salesmen, on the other hand, had no written contracts nor specific areas assigned and frequently forwarded checks payable to Nationwide and occasionally forwarded customers' deposits to it. Neither did Nationwide manufacture any of the goods it sold.

These minor factual differences take on importance for Nationwide under its view that the "gist of *Scripto* is that an

4. In Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940), the source of the quoted test, the quid pro quo was said to be the "protection, opportunities and benefits given by the state."

5. The United States Supreme Court appropriately observes in a note at this point:
   "Strictly speaking, there is no question of the connection or link between the State and 'the person * * * it

seeks to tax.' For that person in Miller Bros. Co. v. Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744, in Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660, and in the present case [National Bellas Hess] is the user of the goods to whom the out-of-state retailer sells. National is not the person being directly taxed, but rather it is asked to collect the tax from the user. It is, however, made directly liable for the payment of the tax whether collected or not. * * *"

## 354

employer *cannot* turn an agent into an independent contractor by the use of a label in a contract." Petitioner apparently assumes that the court in *Scripto* based its finding of a sufficient nexus on an agency relationship between Scripto .and .its brokers. We do not so read *Scripto*. Scripto had argued that the designation in the written contract of its solicitors as "independent contractor(s)" prevented the activities of these solicitors from being imputed to Scripto and thus precluded the finding of a sufficient nexus between Scripto and Florida. To this the U. S. Supreme Court responded:

" * * * The formal shift in the contractual tagging of the salesman as 'independent' neither results in changing his local function of solicitation nor bears upon its effectiveness in securing a substantial flow of goods into Florida. * * *"

The Supreme Court then did not place any special emphasis on whether the solicitors were labeled agents or independent contractors; it neither denied Scripto's solicitors were independent contractors nor affirmed that they were agents. We do not see that the court was required to employ common law labels in articulating constitutional standards in this area. That the solicitors' "local function of solicitation" and "effectiveness in securing a substantial flow of goods into Florida" were enough to establish a constitutionally sufficient nexus irrespective of their designation seems clearly to be the court's holding.[6] The same factors are present in the case at bar.

Nationwide seeks to distinguish *Scripto* on the existence in that case of written contracts and assigned territories, arguing that these are indicative of a closer nexus than is present in the case at bar. To the extent that this argument is an attempt to show the presence of an agency relationship between seller and solicitor in *Scripto*

and the absence thereof in the case at bar, it has, we think, already been answered. As for Nationwide's salesmen, we think that neither the absence of written contracts, nor the absence of assigned territories, nor the occasional handling of cash payments (in the words of *Scripto*) "results in changing his [their] local function of solicitation nor bears upon its [their] effectiveness in securing a substantial flow of goods into Florida [Alabama]."

We do not mean to say that the intimacy of the relationship between the out-of-state seller and persons whose activity within Alabama is sought to be imputed to him is entirely irrelevant; on the contrary, it may have some bearing on the sufficiency of the nexus. We merely say, as *Scripto* says, that the out-of-state seller Nationwide's relationship with Alabama is close enough, constitutionally for use tax purposes, when it receives orders, resulting in a substantial flow of goods, from Alabama customers solicited for it by its salesmen operating within Alabama.

Nationwide relies upon Miller Brothers Co. v. Maryland, 347 U.S. 340, 74 S.Ct. 535. In that case, Maryland's attempt to require an out-of-state seller to collect a use tax levied on goods sold to Maryland residents at seller's store in Delaware was held unconstitutional because seller's connections with Maryland were insufficient. In *National Bellas Hess*, supra, the court observed:

" * * * And in Miller Bros. Co. v. Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744, the Court held that Maryland could not constitutionally impose a use tax obligation upon a Delaware seller who had no retail outlets or sales solicitors in Maryland. There the seller advertised its wares to Maryland residents through newpaper and radio advertising, in addition to mailing circulars four times a year. As a result, it made substantial sales to Maryland customers,

---

**6.** The U. S. Supreme Court said, "The *test is* simply *the nature and extent of*      *the activities of the appellant* in Florida." [Emphasis supplied]

and made deliveries to them by its own trucks and drivers.

"In order to uphold the power of Illinois to impose use tax burdens on National in this case, we would have to repudiate totally *the sharp distinction which these and other decisions have drawn between mail order sellers with retail outlets, solicitors, or property within a State, and those who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business.* But this basic distinction, which until now has been generally recognized by the state taxing authorities, is a valid one, and we decline to obliterate it." [Emphasis supplied]

Nationwide cites State v. West Point Wholesale Grocery Co., supra, as compelling the conclusion that it lacks a constitutionally sufficient nexus with Alabama. There we held an out-of-state vendor not liable for a *franchise tax,* a *permit fee,* and an *admissions tax* despite the presence of salesmen in Alabama and the vendor's delivery of goods in Alabama in its own trucks. We held that the law of the use tax cases was not controlling in cases involving other species of taxes; we think the converse is also true. The distinctions we drew there between *Scripto* and *West*

*Point* apply equally between *West Point* and the case at bar:

" * * * A further differentiation is deducible in that the burden of the tax was placed upon the Florida consumer, regardless of its source; and Scripto was not liable for any tax save when it failed or refused to collect it from its Florida customers."

Furthermore, when we pointed out in *West Point* that the tax involved in McGoldrick v. Berwind-White Coal Mining Company, 309 U.S. 33, 60 S.Ct. 388, 84 L. Ed. 565 (1940), was akin to a use tax this was sufficient to render that decision inapposite in the *West Point* case. We adhere to these distinctions. Particularly in view of the close factual congruity between *Scripto* and the case at bar, we think it unnecessary for us to decide whether Alabama must have as close a connection with an out-of-state vendor to require him to *collect a tax* as it must have to require him to *pay a tax.*[7] What we have said about *West Point* also disposes of Family Discount Stamp Co. of Ga., etc. v. State, supra, a case involving a license tax.

Nationwide also contends that State v. Lane Bryant, Inc., supra, and National Bellas Hess v. Department of Revenue, supra, compel the conclusion that it had an insufficient nexus with Alabama to be re-

7. In Scripto, Inc. v. Carson, 105 So.2d 775, the Supreme Court of Florida apparently answered this question in the negative, saying:
"We do not lose sight of the organic essential that in the imposition of a tax the lawmaking body is bound to respect jurisdictional limitations in the same fashion that a court must obtain jurisdiction in order to adjudicate the rights of litigants. However, for purposes of enforcing collection of a use tax we are not persuaded by the view that the dealer involved must necessarily be subject to the jurisdiction of the taxing forum to the extent that he would be amenable to suit in that situs. We have the view that even though a dealer is not represented in the taxing state to the extent that service of judicial process on his representative would necessarily bind him to respond in a matter in litigation; nonetheless, he can still be represented by solicitors and limited agents who contact Florida residents to the extent that jurisdictional contacts would thereby be established sufficient to support the enforced collection of the Florida use tax."
The same view seems implicit in the United States Supreme Court's *Scripto* opinion:
" * * * The burden of the tax is placed on the ultimate purchaser in Florida and it is he who enjoys the use of the property, regardless of its source. We note that the appellant is charged with no tax—save, when, as here, he fails or refuses to collect it from the Florida customer. * * * "

quired to collect its use tax. Both these cases held that out-of-state vendors cannot constitutionally be required to collect a use tax where their only connections with the taxing state were the sending of catalogs through the mails to its residents, the receipt of orders from them through the mail, and the sending of goods and acceptance of payment by mail. National Bellas Hess also made deliveries by common carrier. We think that neither of these cases is controlling. *National Bellas Hess* drew a "sharp distinction * * * between mail order sellers with retail outlets, *solicitors*, or property within a State, and those who do no more than communicate with customers in the State by mail or common carrier * * *" [Emphasis supplied]. We must adhere to that distinction. Just as the Supreme Court felt no need in *National Bellas Hess* either to follow or overrule *Scripto,* so we see no need to follow or overrule State v. Lane Bryant, Inc., here, considering it to be factually inapposite.

Only State v. MacFadden-Bartell Corporation, 280 Ala. 386, 194 So.2d 543 (1967), remains to be considered. The facts in that case are lengthy and sufficiently appear in the opinion of the Court of Civil Appeals in the case at bar. We think the distinctions which we drew in *MacFadden-Bartell* between that case and *Scripto* demonstrate, without the need for additional discussion, that we consider *MacFadden-Bartell* to be inapt.

In two State Supreme Court cases of recent origin which we have found dealing directly with this question, both have held constitutional the efforts of the State to make a use tax collector out of an unqualified foreign corporation. Scripto, Inc. v. Carson, (Fla.) 105 So.2d 775 (1958), affirmed 362 U.S. 207, 80 S.Ct. 619, and Topps Garment Manufacturing Corporation v. State, 212 Md. 23, 128 A.2d 595 (1957). We have already indicated that we believe that the facts of the instant case are on "all fours" in all. material aspects with those of *Scripto.* Likewise, the facts of

*Topps* appear to us to be materially the same.

In *Topps,* by stipulation, the facts were:

" * * * Topps, an Indiana corporation, manufactures uniforms that it sells in various parts of the United States. It neither owns nor rents any office, showroom, distribution center or warehouse in Maryland. It sells its products to Maryland purchasers by means of solicitors, some of whom are Maryland residents. These solicitors have been furnished with catalogs and order blanks. They are not on Topps' payroll, are not under supervision and do not account for their time or on whom they call with their catalogs. When a solicitor takes an order for goods shown in the catalog, he receives a percentage of the price as a deposit, which he retains as his commission. The order is mailed by the solicitor to Topps, which has the right to accept or reject it. When it is accepted, the goods are mailed by Topps direct to the purchaser, usually C.O.D., but in some cases on credit on open account. * * *'

*Topps* attacked the Maryland statute (under which the assessments were made against it as a use tax collector, the provisions of which are essentially the same as ours) as affronting both the Commerce and Due Process Clauses. After a comprehensive summary of the decisions of the United States Supreme Court on this subject, and under an almost identical factual situation as both the instant case and *Scripto*, the Maryland Court concluded that the unqualified foreign corporation was liable to collect the Maryland use tax.

To the argument that the solicitors or salesmen were not agents or servants but were independent contractors, the Maryland Court of Appeals (its highest appellate court) responded that this made no difference and added inter alia:

" * * * It is beyond question that they were agents of Topps for the pur-

pose of displaying its products by means of its catalogs, for the taking of orders for those products, for the forwarding of the orders to headquarters and for the purpose of accepting deposits on the sales. The activities of the individual solicitors may have been intermittent but in total their activities were regular, systematic and productive of a substantial flow of goods into Maryland.

" * * * We think that activities carried on in behalf of the foreign corporation by agents who are independent contractors, in connection with the matters for which they are agents, are as much in behalf of the corporation as similar activities carried on by agents who are servants, and we see no significant distinction in the two situations. The test is the nature and extent of the activities. * * *

\* \* \* \* \* \*

"We think it clear from the authorities cited that appellant is not helped by the fact that its soliciting agents in Maryland were independent contractors, and that its activities in and in relation to Maryland clearly accord with the 'traditional notions of fair play and substantial justice' which the International Shoe Co. case says are proper tests to determine whether a State may exercise jurisdiction in a particular situation. The authorities establish that appellant is not denied due process of law by what the State has done. * * * "

The view has been advanced that to make a use tax collector out of Nationwide is to hold that the "State has the power to make a tax collector of one whom it has no power to tax." And, that such a division is an "unwarranted extension of the power of a state to subject persons to its taxing power who are not within its jurisdiction and have not in any manner submitted themselves to it." Such views were expressed by Mr. Justice Jackson in General Trading Co. v. Tax Comm'n, 322

U.S. 335, 339, 64 S.Ct. 1028, 1030, 88 L.Ed. 1309 (1944), in his dissent.

But, even Mr. Justice Jackson modified his position in *General Trading Co.,* supra, for in *Miller Bros.,* supra, in which case he authored the opinion for the court, he took occasion to restate his later views in this fashion:

"The nearest support for Maryland's position is General Trading Co. v. State Tax Comm'n, 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309. The writer of this opinion dissented in that case and, whether or not in so doing he made a correct application of principles of jurisdiction to the particular facts, it is clear that circumstances absent here were there present to justify the Court's approval of liability for collecting the tax. That was the case of an out-of-state merchant entering the taxing state through traveling sales agents to conduct continuous local solicitation followed by delivery of ordered goods to the customers, the only nonlocal phase of the total sale being acceptance of the order. Probably, except for credit reasons, acceptance was a mere formality, since one hardly incurs the cost of soliciting orders to reject. The Court could properly approve the State's decision to regard such a rivalry with its local merchants as equivalent to being a local merchant. But there is a wide gulf between this type of active and aggressive operation within a taxing state and the occasional delivery of goods sold at an out-of-state store with no solicitation other than the incidental effects of general advertising. * * * "

We have already indicated that we adhere to the principles enunciated in *Scripto,* supra (as well as *General Trading Co.,* supra, upon which *Scripto* is based). We consider these cases, and *Topps,* to be controlling. We conclude that no reversible error appears in the Court of Civil Appeals' opinion and that its decision is due to be affirmed.

One further matter, however, remains to be disposed of. Petitioner observes in brief, "The Court of Civil Appeals in its decision of January 5, 1970 as extended on January 20, 1970, *reversed and rendered* the trial court's decrees * * * [notwithstanding] the amount of taxes due * * * has never been determined by the trial court * * *." [Emphasis supplied] We agree. And, in view of this posture of the case we are of the opinion, and hold, that the Court of Civil Appeals should have reversed and remanded these three cases to the Circuit Court solely for the purpose of determining and fixing the amount of taxes due. Therefore, although we affirm its reversal of the decrees of the Circuit Court, we remand these cases to the Court of Civil Appeals with directions to reverse and remand them to the Circuit Court for further proceedings not inconsistent with this decision.

We would be remiss in our duties if we did not acknowledge our indebtedness to counsel for their very thorough and well written briefs.

Affirmed in part and remanded with directions.

LIVINGSTON, C. J., and LAWSON, SIMPSON, MERRILL, HARWOOD, MADDOX, and McCALL, JJ., concur.

COLEMAN J., concurs in result.