550 A.2d 707

**RIDGEWOOD LOG HOMES, INC.**

v.

**COMPTROLLER OF the TREASURY.**

No. 368, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Dec. 5, 1988.

Paula M. Junghans (Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., on the brief), Baltimore, for appellant.

Gaylin Soponis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Deborah B. Bacharach and Linda Koerber Boyd, Asst. Attys. Gen., on the brief), Baltimore, for appellee.

Argued before BISHOP, ALPERT and ROBERT M. BELL, JJ.

ALPERT, Judge.

Ridgewood Log Homes, Inc. (Ridgewood) is a Maryland corporation operated by a husband and wife team, Jack and Alice Leishear. They act as representatives for Lok–N–Logs, Inc., a New York corporation that manufactures stock and custom designed pre-cut log home kits. After the Leishears purchased a Lok–N–Logs home themselves in 1980, Lok–N–Logs asked the couple if they would be interested in acting as its dealer in Maryland and indicated they would receive a 10 to 12 percent commission on any home they sold. The Leishear's agreed and, under the name of

Ridgewood Log Homes, Inc., began to represent Lok–N–Logs in Maryland. Previously, they were operating a small land developing company called Ridgewood Developers. They advertised in newspapers, participated in trade shows, and distributed brochures. They used their own Lok–N–Logs home as a model for customers. When a customer desired to purchase a log cabin, Ridgewood developed a worksheet of costs and materials, then based on this information filled out a Lok–N–Logs contract form that was sent to Lok–N–Logs. The form contained a line for completion: "sales tax ____ county ___ state ___." At Lok–N–Logs' direction, this section was marked N/A, and no amount was ever filled in, either by Ridgewood or Lok–N–Logs. Although Ridgewood prepared the contract, it was never a party to the contract. Lok–N–Logs required that Ridgewood send the contract to Lok–N–Logs, along with the customer's check for twenty percent of the contract price, made payable to Lok–N–Logs. Lok–N–Logs then reviewed the contract and the prices, signed the contract, and sent it directly to the customer. Ridgewood would then receive a copy of the fully executed contract.

Lok–N–Logs notified Ridgewood and the buyer when to expect delivery of the home kit, and that the customer must have a certified check for the balance of the purchase price, payable to Lok–N–Logs, at the delivery site. When the log home kit has been delivered, Ridgewood generally met the shipment with the customer, and pursuant to its contract with Lok–N–Logs, provided the customer with eight hours of technical assistance. Ridgewood received its 10 to 12 percent commission approximately six weeks after delivery.

The Comptroller levied, jointly and severally, an assessment against Lok–N–Logs and Ridgewood of approximately $46,000, plus interest and penalties, for unpaid use taxes during the period of December 18, 1980 through November 8, 1984.[1] Ridgewood, upon receiving this assessment, noti-

---

1. Lok–N–Logs, Inc. failed to apply to the Comptroller for a revision of the assessment; accordingly, pursuant to §§ 351 and 399 of Article 81

fied the customers of Lok–N–Logs homes to remit to them the amount calculated for use tax. Some of the buyers complied with this request, and Ridgewood in turn transmitted the money to the Comptroller, who then reduced the assessment. The remaining buyers, however, refused to comply, leaving the rest of the assessment unpaid. Unable to collect the tax from Lok–N–Logs, the Comptroller, pursuant to the authority reposed in him by section 372(b) of Article 81 of the Annotated Code of Maryland,[2] sought to collect the tax from Ridgewood.

Ridgewood protested this assessment. After formal administrative hearings before the Comptroller, the assessment was affirmed. It appealed that decision to the Maryland Tax Court, which affirmed the assessment but reversed the assessment of penalties. Ridgewood appealed that decision to the Circuit Court for Frederick County, which affirmed the decision of the Maryland Tax Court. This appeal followed, raising the following issues:

I. Whether the trial court erred in finding appellant to be a vendor or representative for Lok–N–Logs within the meaning of Article 81, Section 372(b) of the Maryland Annotated Code?

II. Whether the Comptroller of the Treasury abused his discretion by seeking to recover the use tax from appellant rather than from Lok–N–Logs, the manufacturer, or from the past consumers of the log homes?

I.

Scope of Appellate Review of Tax Court Decisions

The scope of appellate review in these matters has been succinctly stated:

---

of the Maryland Annotated Code, the assessment is final as to Lok–N–Logs.

**2.** All subsequent statutory references are to Article 81 of the Md.Ann. Code unless otherwise specified.

[J]udicial review of decisions of the Maryland Tax Court is severely limited. Maryland Code (1957, 1987 Cum. Supp.), Art. 81, § 229(*o*), provides that on appeal "[t]he circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." When this Court reviews a Tax Court decision, the narrow scope of review set forth in § 229(*o*) is equally applicable. *See, e.g., Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296, 1303 (1985); *Comptroller v. Haskin)*, 298 Md. 681, 689–90, 472 A.2d 70, 76–77 (1984); *Comptroller v. Diebold, Inc.*, 279 Md. 401, 407, 369 A.2d 77, 81 (1977).

*Comptroller v. Burn Brae Dinner Theatre*, 72 Md.App. 314, 318, 528 A.2d 546 (1987).

This court has, on numerous occasions, applied the principles of section 229(*o*) as delineated by the Court of Appeals in *Ramsay, Scarlett*. *E.g., Disclosure Information Group v. Comptroller*, 72 Md.App. 381, 384–85, 530 A.2d 8 (1987); *Comptroller v. NCR Corp.*, 71 Md.App. 116, 125–26, 524 A.2d 93 (1987), *affirmed in part, reversed in part*, 313 Md. 118, 544 A.2d 764 (1988); *Pinder v. Dean*, 70 Md.App. 252, 256, 520 A.2d 1119 (1987), *aff'd*, 312 Md. 154, 538 A.2d 1184 (1988); *UPS v. Comptroller*, 69 Md.App. 458, 464–65, 518 A.2d 164 (1986); *Comptroller v. World Book Childcraft International, Inc.*, 67 Md.App. 424, 436–42, 508 A.2d 148 (1986). In each instance, we followed a three-step analysis in our review of the tax court's findings:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law." *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. at 834, 490 A.2d 1296.

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factu-

al findings to determine if they are supported by substantial evidence, *i.e.,* by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that "It is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference." *Id.* at 835, 490 A.2d 1296.

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles." *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. at 838, 490 A.2d 1296.

#### 1. *Applying The Correct Principles of Law*

On appeal, this court will first determine whether the tax court applied the correct principles of law to the case. *Ramsay, supra,* 302 Md. at 834, 490 A.2d 1296. Section 376 in Article 81 of the Annotated Code of Maryland imposes a use tax on "[e]very vendor engaging in business in this State and making sales of tangible personal property for use, storage or consumption in this State."

Ridgewood does not challenge the fact that the use tax is due and payable on Lok–N–Logs homes purchased in Maryland; rather, it challenges only the imposition of this tax on it. Thus, it is clear, perhaps without dispute, that the tax court recognized and applied the correct principles of law.

#### 2. *Factual Findings*

Having determined that the Comptroller has the power to assess a use tax on the subject transaction, we now examine the findings of fact in this case to determine if they are

supported by substantial evidence. As there is no dispute of fact, we move to the third step of our analysis.

### 3. *Applying the Law to the Facts*

■ The final step in our analysis is determining whether the court properly applied the law in this case to the facts. *Ramsay, supra,* at 838, 490 A.2d 1296. The tax court found that both Lok–N–Logs and Ridgewood are liable for this tax. Lok–N–Logs, Inc. is primarily liable for the use tax because it is a vendor engaged in business in this state within the meaning of § 372(b), 376 and 372(k) [3] and because it sells homes that are used in this state, upon which the use tax is payable. Thus, we hold that the tax court did not err in imposing a use tax assessment against Lok–N–Logs. *See, e.g., Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue,* 483 U.S. 232, 107 S.Ct. 2810, 2821, 97 L.Ed.2d 199 (1987); *Scripto, Inc. v. Carson,* 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960); *Good's Furniture v. Iowa State Bd. of Tax,* 382 N.W.2d 145 (Iowa 1986); *Allemed, Inc. v. Dept. of Revenue,* 101 Ill.App.3d 746, 57

---

**3.** These sections provide, in pertinent part:

372: (b) *"Vendor"* means every person making sales in this State or elsewhere of tangible personal property or services subject to the tax imposed by this subtitle....

376: Every vendor engaging in business in this State and making sales of tangible personal property for use, storage or consumption in this State which are taxable under the provisions of this subtitle, at the time of making such sales, ..., shall collect the tax imposed by this subtitle from the purchaser.

372: (k) *"Engaged in business in this State"* means the selling or delivering in this State, or any activity in this State in connection with the selling or delivering in this State, of tangible personal property for use, storage or consumption within this State. The term shall include, but shall not be limited to the following acts or methods of transacting business.

(1) The maintaining, occupying or using, permanently or temporarily, directly or indirectly, or through a subsidiary or agent, by whatever name called, of any office, place of distribution, sales or sample room or place, warehouse or storage place, or other place of business.

(2) The having of any representative, agent, salesman, canvasser, or solicitor operating in this State for the purpose of selling, delivering, or the taking of orders for any tangible personal property.

Ill.Dec. 164, 428 N.E.2d 714 (1981); *Quality School Plan v. State*, 53 Ala.App. 418, 301 So.2d 183 (1974); *Ex Parte Newbern*, 286 Ala. 348, 239 So.2d 792 (1979); *Topps Garment Manufacturing Corporation v. State*, 212 Md. 23, 128 A.2d 595 (1956); *Johnston v. Gill*, 224 N.C. 638, 32 S.E.2d 30 (1944).

Next, we must determine whether the Comptroller possessed the requisite authority to assess a use tax against Ridgewood. A review of the Maryland Code indicates that the Comptroller is statutorily permitted to assess the use tax on Ridgewood. Section 376 imposes the duty to collect and remit the tax on vendors who engage in business in Maryland. The critical definition of "vendor" is found in section 372(b):

> *"Vendor"* means every person making sales in this State or elsewhere of tangible personal property or services subject to the tax imposed by this subtitle. When in the opinion of the Comptroller it is necessary for the efficient administration of this subtitle to regard any salesman, representative, peddler or canvasser as the agent of the dealer, distributor, supervisor or employer under whom he operates or from he obtains the tangible personal property sold by him, the Comptroller may, in his discretion, treat and regard such agent as the vendor jointly responsible with his principal, employer or supervisor, for the collection and payment of the tax imposed by this subtitle.

Ridgewood contends that it is not a "vendor" as defined in section 372(b), but rather considers itself an independent contractor. An examination of its activities, however, reveals that the tax court could have considered Ridgewood a vendor. A vendor is defined in § 372(b) as a "person making sales in this State." Vendors are liable for the collection and payment of use tax if they engage in business in the State, § 376. By statutory definition, a vendor is "engaged in business in this State" if he is "selling or delivering in this State," or is conducting "any activity in this State in connection with the selling or delivering in this

State." Such activities include (1) maintaining, occupying or using . . . any office, . . . sales or sample room, . . . or other place of business," or (2) having any representative, agent, salesman . . . selling, delivering, or [the] taking [of] orders." Section 372(k). Ridgewood clearly meets this statutory definition. It is engaged in the business of selling Lok–N–Logs home kits in this State. It maintains a place of business (the principals' home) in this state, and uses it as a Lok–N–Logs model home; it takes orders from customers, and provides technical assistance to customers in constructing the homes. Therefore, under the clear language of the statute, we hold that the tax court did not err in finding that Ridgewood is a "vendor" and can be held liable for the collection and payment of the use tax.[4]

■ Even if Ridgewood were not considered a "vendor," the statute provides that the Comptroller may regard any salesman or representative as the agent of the vendor and hold them both liable. Ridgewood contends that because Lok–N–Logs maintained no control over its sales activities, it cannot be considered an "agent" for Lok–N–Logs.

We disagree. The statute clearly states that the Comptroller may, if necessary, regard any salesman, representative, peddler or canvasser as the agent of the dealer, and hold them both jointly responsible for the collection and payment of the tax. Classifying itself as an independent contractor rather than as an agent does not alleviate Ridgewood of the responsibility to collect the tax. *See Scripto, Inc. v. Carson,* 362 U.S. 207, 211–212, 80 S.Ct. 619, 621–622, 4 L.Ed.2d 660 (1960) (the Supreme Court held that a company calling its salesmen "independent contractors," although the salesmen were not regular employees, but solicited sales for the company and forwarded their orders to it for

---

**4.** Where there is no ambiguity or uncertainty in a statute, there is no need to look beyond its words to find its meaning. *Macke Co. v. Comptroller of the Treasury,* 302 Md. 18, 485 A.2d 254 (1984); *Comptroller of the Treasury v. American Cyanamid Co.,* 240 Md. 491, 214 A.2d 596 (1965).

acceptance, was of "no" constitutional significance, and further held that the use tax could be collected); *Topps Garment Manufacturing Corporation v. State*, 212 Md. 23, 28, 128 A.2d 595 (1956) (the Court of Appeals held that certain employees who displayed the company's product, took orders for its products, and forwarded the orders for acceptance to the company would be considered agents of the company regardless of whether the company classified them as independent contractors or its agents); *Ex Parte Newbern*, 286 Ala. 348, 239 So.2d 792, 796 (1979) (the Supreme Court of Alabama held that a company's salesmen, whom the company classified as self-employed independent contractors, were just as much its representatives under the state statute as if they had been salaried employee salesmen, because although they had no written contract with the company, they solicited orders for the company and were paid a commission on its sales). Therefore, we hold that the Comptroller's decision to assess a use tax against Ridgewood was reasonable and consistent with the applicable law.

## II.

### Abuse of Discretion

■ Finally, Ridgewood argues that the Comptroller abused his discretion when he assessed the use tax on it. Section 372(b), which permits the Comptroller to assess the use tax on representatives, states in pertinent part, "When in the opinion of the Comptroller it is necessary for the efficient administration of this subtitle to regard any salesman, representative ... as the agent of the dealer, distributor ..." the Comptroller may, in his discretion, treat and regard such agent as the vendor jointly responsible ... for the collection and payment of the tax...." Ridgewood contends that the Comptroller failed to demonstrate why it is necessary for the efficient administration of the law to proceed against Ridgewood for the collection and payment of the tax, and, therefore, he abused his discretion in assessing the tax against it. We disagree. The tax court

found that Lok–N–Logs, although it was assessed and held liable for collection and payment of the use tax, has refused to pay it, and that Ridgewood, as its representative in Maryland, can be held liable for the tax.

The term "discretion" involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

*Wendel v. Swanberg*, 384 Mich. 468, 185 N.W.2d 348, 351 (1971) (quoting, *Spalding v. Spalding*, 355 Mich. 382, 94 N.W.2d 810, 811–12 (1959). *See also People v. Sawicki*, 4 Mich.App. 467, 145 N.W.2d 236, 239 (1966).

The tax court found that the Comptroller correctly assessed the use tax on Ridgewood and did not abuse his discretion in doing so. The court found that the Comptroller's actions were not arbitrary or discriminatory, but were authorized by law.

■ The purpose of the use tax is two-fold. First, it produces revenue for the State that otherwise might not be available by taxing goods used, stored, or consumed in this State, and secondly, it furnishes some measure of protection to Maryland dealers from competition with outside vendors not subject to liability for sales tax. *See Lane Construction Corp. v. Comptroller of the Treasury*, 228 Md. 90, 178 A.2d 904 (1962).

Section 372(b) clearly authorizes the Comptroller to collect the use tax from a representative of a vendor. Those acting as representatives for out-of-state vendors have the obligation to make sure that they are in compliance with Maryland laws. This includes providing for payment of the use tax in the contract orders forwarded to an out-of-state manufacturer (vendor). The parties in this case failed to include this in their contract. Appellant seeks to transfer

the guilt of its noncompliance by accusing the Comptroller of an abuse of discretion. The predicament in which it now finds itself is of its own doing, not the Comptroller's. The fact that it neglected to charge its customers a use tax may have been a real selling point, considering the customers were ordering home kits which cost between fifteen to twenty thousand dollars. Application of the use tax would have increased the price of their home kits by as much as a thousand dollars. The Comptroller acted within the authority given to him by the state legislature, pursuant to section 372(b), when he assessed a use tax on appellant. The Comptroller did not abuse the discretion reposed in him by the statute.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.