564 A.2d 77

**VULCAN BLAZERS OF BALTIMORE CITY, INC.**

v.

**COMPTROLLER OF THE TREASURY.**

No. 77, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Sept. 29, 1989.

Joel Margolis and Zell Margolis, Baltimore, for appellant.

J. Joseph Curran, Jr., Atty. Gen., Deborah B. Bacharach, Linda Koerber Boyd and Gaylin Soponis, Asst. Attys. Gen., Baltimore, for appellee.

Submitted before WILNER and ROSALYN B. BELL and JAMES S. GETTY (Retired, Specially Assigned), JJ.

WILNER, Judge.

The substantive issue in this appeal is whether appellant, an incorporated association of firefighters in Baltimore City known as the Vulcan Blazers, is exempt from Maryland's Admissions and Amusement Tax. More particularly, we are called upon to determine whether, in concluding that the appellant organization is not exempt, the Circuit Court for Baltimore City improperly substituted its judgment for that of the Maryland Tax Court.

Appellant was initially formed as an entity in 1970 and was incorporated in 1971. It is affiliated with the International Association of Black Professional Firefighters, serving as the Baltimore City chapter of that Association. Patterning itself after fraternal organizations such as the Elks and the Knights of Columbus, the organization raises funds through membership dues and through the operation of an entertainment hall in West Baltimore. The hall is used mostly by members of the association and their guests, but it is also rented out to other groups. The hall features a cash bar with television, music, and dancing. Two nights a week a disc jockey is hired and admission is

charged. The hall serves as a base for all of appellant's operations.

During the period at issue here, Md.Ann.Code art. 81, § 402(b) [1] authorized Baltimore City and other incorporated municipalities to levy a tax

"on the gross receipts of every person ... obtained from sources within the [City] derived from the amounts charged for (1) admission to any place, whether the admission be by single ticket, season ticket or subscription, including a cover charge for seats or tables at any roof garden, cabaret or other similar place where there is furnished a performance when payment of the amounts entitles the patron thereof to be present during any portion of the performance; [or] ...

(4) refreshment, service or merchandise at any roof garden, cabaret or other similar place where there is furnished a performance. The term 'roof garden or other similar place' shall include any room in any hotel, restaurant, hall or other place where music or dancing privileges or other entertainment, except mechanical music, radio or television, alone, and where no dancing is permitted, are afforded the members, guests or patrons in connection with the serving or selling of food, refreshment, or merchandise."

The tax levied under § 402(b) is to be collected by the State Comptroller.

Appellant had been paying admission and amusement taxes, pursuant to § 402(b), on receipts from the operation of its hall. In 1985, however, the Comptroller's office audited the organization for the period from November 1, 1980 through September 30, 1984 and assessed the orga-

---

1. Effective January 1, 1989, the provisions of the Maryland Admission and Amusement Tax were recodified as Title 4 of the Tax–General article. Md.Ann.Code art. 81, § 402 became Md.Tax–Gen.Code Ann. § 4–102 without substantive change. As article 81 was in effect at all times relevant to this case, we shall refer to it throughout this opinion.

nization for underpayment.[2] Thereafter, in addition to contesting the assessment, appellant filed a claim for a refund of the admissions and amusement taxes it had previously paid. It claimed to be exempt from the Admissions and Amusement Tax pursuant to Md.Ann.Code art. 81, § 406,[3] which stated: "No tax shall be levied or collected under the provisions of § 402 of this article: (1) Upon the gross receipts derived from the amounts charged for admissions or refreshments, service and merchandise when such gross receipts *are devoted exclusively to charitable, religious or educational purposes ....*"[4] (Emphasis added.) *See also* Md.Regs.Code tit. 03, § 01.01.07.

The organization commingled its receipts from dues and from operations and rental of the hall. As dues and rental receipts are not receipts from admissions or from refreshments, service, and merchandise, they ordinarily would not be considered in determining if expenditures of receipts from admissions and amusement "are devoted exclusively to charitable, religious, or educational purposes." The parties seem to agree, however, that as expenditures from receipts derived from the operations of the hall cannot be separated from expenditures from receipts derived from dues and rentals, all expenditures must be considered in resolving that issue.

---

2. The organization was also assessed for underpaying sales and use taxes. That deficiency was paid, however, and is not at issue in this appeal.

3. Md.Ann.Code art. 81, § 406 was recodified, without substantive change, as Md.Tax–Gen.Code Ann. § 4–103.

4. After the audit, appellant applied for and was granted an exemption from the federal income tax requirement. The organization was found to be a "[l]abor, agricultural, or horticultural organization" within the ambit of 26 U.S.C. § 501(c)(5). Subsequently, it also was exempted from the State income tax requirement pursuant to Md.Ann. Code art. 81, § 288(d)(5) (now Md.Tax–Gen.Code Ann. § 10–104(2)), which allows exemptions for those organizations exempted from the federal tax under § 501. In its brief, appellant also claims to have been exempted from the Baltimore City property tax as, in its words, a "tax exempt organization [that] uses its money exclusively for charitable, educational, or religious purposes." However, no documentation that would support this claim has been included in the record extract.

Appellant was organized, as stated in the purpose clause of its articles of incorporation,

"[t]o promote understanding, friendship and cooperation among all members of the Fire Department of the City of Baltimore; to promote various types of athletics and sports, social and cultural affairs to the end that the physical and mental stature of the members might be improved; to cooperate with national and local organizations in programs of education and instruction in order to help reduce loss of life and property due to fire; to encourage the members to thoroughly familiarize themselves with the rules and regulations of the Baltimore City Fire Department so that these members will be better able to serve their city."

It is undisputed, and has been from the start, that the great bulk of appellant's total receipts are used to operate the entertainment hall. The next greatest expenditure is for other benefits to members and their families, such as annual picnics, monthly birthday parties, awards ceremonies, transportation to political rallies and athletic events, uniforms for athletic events, membership pins, and flowers, gifts, and monetary contributions for sick or deceased members. Funds also are spent on educational and community awareness programs regarding firefighting and discrimination. To a much lesser extent, the organization makes contributions to political campaigns and charities.[5]

Because most of appellant's receipts are used to benefit the members, the Comptroller denied the request for a refund, concluding that the organization "failed to demonstrate even marginally that its income is devoted exclusive-

---

5. For example, in 1981 appellant collected about $49,000 in membership dues and about $215,000 from the operation of the hall. Of the total $264,000 in receipts, approximately $121,000 went back into operating the hall, $39,000 went to benefits for members, and $14,000 went to what appellant characterized as "[c]ontributions, gifts, [or] grants." In 1984, when total receipts were about $226,000, about $105,000 was used for operation of the hall, $47,000 for benefits to members, and $6,500 for "[c]ontributions, gifts, [or] grants."

ly to charitable and educational purposes." *See Supervisor v. Trs. Bosley Meth. Ch.*, 293 Md. 208, 215, 443 A.2d 91 (1982); *Ballard v. Supervisor of Assess.*, 269 Md. 397, 404, 306 A.2d 506 (1973) (explaining that a use will be found to be exclusively for a particular purpose if it is primarily or substantially for that purpose).

The organization appealed the Comptroller's decision to the Tax Court, which reversed. While agreeing that appellant's receipts were used primarily to benefit the members, the Tax Court explained:

> "If one accepts the proposition that encouraging upward mobility of black fire fighters and maintaining good health and high morale for all fire fighters are desirable goals benefiting the entire community, then Petitioner's position is persuasive.
>
> Fire fighting is different from other occupations in a number of ways. It requires round-the-clock 365 days a year coverage. Therefore, parties for members which allow families to participate are important to maintaining the morale of those on duty. Fire fighting requires excellent physical health, which is enhanced by athletic activities. Upward mobility is certainly encouraged by educational programs and positive political support.
>
> It is the opinion of this Court that activities and programs which enhance opportunities of black citizens to gain positions of responsibility in important operations such as the fire department can be considered charitable as contributing to the public welfare. The same can be said of activities which improve the morale of indispensable public servants who work under unusually stressful and dangerous conditions."

The Comptroller then appealed to the Circuit Court for Baltimore City, which reversed the decision of the Tax Court.

The Circuit Court concluded that because the organization benefited primarily its members, it was "an organization similar to other fraternal organizations." *See generally Lodge # 817, Order of Elks v. Supervisor*, 292 Md. 533,

439 A.2d 591 (1982); Md. Tax–Prop. Code Ann. § 7–202 (discussing common characteristics of fraternal organizations). The Circuit Court then explained:

"This Court agrees that it has the right to review the Tax Court's broad interpretation of the word 'charitable', and reach its own legal conclusions as to whether the purposes to which Vulcan Blazers devotes its funds are, as a matter of law, exclusively charitable or educational.

While it is uncontested that some of the funds are expended for charitable purposes, it is also clear that the Tax Court held that *ALL* expenditures are for that purpose. One would have to be totally blind to conclude that the long listing of checks and other evidence, including testimony, exhibits and other matters presented to the Tax Court, would convince anyone that such expenditures were anything other than benefits for members and their guests."

(Emphasis in original.)

█ In this appeal, appellant contends that the question of whether its expenditures were "devoted exclusively to charitable, religious, or educational purposes" was a question of fact rather than a question of law. As such, it claims, the Circuit Court could not properly substitute its judgment for that of the Tax Court but was required to review the Tax Court's decision using the "substantial evidence test." We find no merit in this argument and therefore shall affirm.

█ In reviewing a decision of the Tax Court, the Circuit Court and this Court must follow a three-step analysis:

"1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order 'is premised solely upon an erroneous conclusion of law.' *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. [825] at 834, 490 A.2d 1296 [1985].

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that 'It is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference.' *Id.* at 835, 490 A.2d 1296.

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is 'whether, … a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the … controlling legal principles.' *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. at 838, 490 A.2d 1296."

*Ridgewood Log Homes v. Comptroller*, 77 Md.App. 382, 386–87, 550 A.2d 707 (1988). We agree with the Circuit Court that the Tax Court erred in the first step of the analysis. Therefore we need not, as appellant would have us, move on to step two.

. ■ The question before us boils down to one of statutory construction. In essence, the Tax Court found that, because firefighters are indispensable public servants and because they work under unusually dangerous and stressful conditions, any expenditures by a firefighters organization that improve "morale" are "charitable" within the meaning of Md.Ann.Code art. 81, § 406(1), even though under ordinary circumstances they simply would be fraternal. The Court of Appeals has expressly declined to define the word "charitable," stating:

"Indeed, we doubt whether such a rule can be formulated.... Clearly, however, a determination of whether an institution is charitable must include a careful examination of the stated purposes of the organization, the actual work performed, the extent to which the work performed benefits the community and the public welfare in general, and the support provided by donations."

*Supervisor v. Group Health Ass'n*, 308 Md. 151, 156–57, 517 A.2d 1076 (1986) (citations omitted). *See also Comptroller v. Maryland State Bar*, 314 Md. 655, 669–71, 552 A.2d 1268 (1989). Indeed, we do not find it necessary here to adopt a comprehensive definition of the word in order to conclude that the Legislature, in enacting § 406, did not intend the exemption to cover situations such as that now before us.

The Court of Appeals has stated repeatedly:

" 'It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt *must* be resolved in favor of the State. In other words, "to doubt an exemption is to deny it." ... [T]he State's taxing prerogative is never presumed to be relinquished and the abandonment of this power must be proved by the party asserting the exemption.' "

(Emphasis in original.) *Chesapeake and Potomac Telephone Company of Maryland v. Comptroller of the Treasury, Retail Sales Tax Division*, 317 Md. 3, 561 A.2d 1034 (1989) (quoting *Xerox Corp. v. Comptroller*, 290 Md. 126, 137, 428 A.2d 1208 (1981)). *See, e.g., Clarke v. Union Trust Co.*, 192 Md. 127, 63 A.2d 635 (1949) (indicating that the rule of strict construction is not relaxed for charitable organizations). As noted, the Tax Court stated: *"If one accepts the proposition* that encouraging upward mobility of black fire fighters and maintaining good health and high morale for all fire fighters are desirable goals benefiting the entire community, then *petitioner's position is persuasive."* (Emphasis supplied.) That language suggests that the Tax Court itself had some doubt as to whether the

State intended to relinquish its taxing power in situations such as that now before us.

We have more than a mere doubt. A review of the statute in question gives strong indication that the Legislature did *not* intend to create an exemption in cases such as this. In addition to providing an exemption from the Admissions and Amusement Tax where "gross receipts are devoted exclusively to charitable, religious or educational purposes," § 406(1) of article 81 provided an exemption where receipts "inure exclusively to the benefit of a volunteer fire company or a nonprofit rescue squad, or to service, fraternal or veterans' organizations, whose charters have been granted by the Congress of the United States...." [6] Thus, it appears that the Legislature chose to exempt some, but not all, fire department and fraternal-type organizations, and stated with particularity those which it did desire to exempt.

The General Assembly is by no means a novice in drafting and enacting tax exemption statutes for fraternal-type organizations. Md.Tax–Gen.Code Ann. § 10–104(2) exempts from State income tax requirements those organizations that are already exempt from federal income tax requirements via 26 U.S.C. § 501. Subsections 501(8) and (10) of the Internal Revenue Code exempt fraternal organizations under certain circumstances. Md.Tax–Prop.Code Ann. § 7–202 exempts certain fraternal organizations from the requirement of paying property taxes. The Legislature has thus clearly considered situations in which fraternal-type organizations should be exempt from taxes and, apparently, has not deemed the situation now before us to be one of them.

The Tax Court's construction of former Md.Ann.Code art. 81, § 406 would encourage countless groups, believing themselves to represent indispensable public servants with stressful and dangerous jobs, to claim exemption from the

---

**6.** The quoted provisions can now be found, in substantive part, in Md.Tax–Gen.Code Ann. § 4–103(b)(4)(ii) and (iii).

Admissions and Amusement Tax. The Legislature knows how to provide for such an exemption. It did not do so in this case.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; APPELLANT TO PAY THE COSTS.